Case No. 22-13546

In the United States Court of Appeals
for the Eleventh Circuit

_____

Laurence Bonday,
Appellant

v.

Nalco Company LLC,
Appellee

_____

On appeal from the United States District Court
for the Middle District of Florida

_____

**Appellant's Opening Brief**

_____

Timothy L. Meyer
Duke University School of Law
210 Science Drive
Durham, NC 27708
meyer@law.duke.edu
(510) 928-1439

## <u>Certificate of Interested Persons, Cartarvis Jordan v.<br>State of Georgia, et al., Case No. 21-13621</u>

We file this Certificate of Interested Persons and Corporate Disclosure Statement in accordance with Eleventh Circuit Rule 26.1-1:

1. Badalamenti, Hon. John L., U.S. District Court Judge

2. Bonday, Laurence, Defendant-Appellant

3. Ecolab, Inc. (publicly traded as "ECL"), Parent company of Appellee

4. Hooker, Valerie L., Counsel for Appellee

5. Jackson Lewis P.C., Counsel for Appellee

6. Meyer, Timothy L., Counsel for Appellant

7. Mizell, Hon. Nicholas P., U.S. Magistrate Judge

8. Nalco Company LLC, Appellee

9. Thorne, Rene E., Counsel for Appellee

## Statement Regarding Oral Argument

Laurence Bonday respectfully requests oral argument. For nearly two years, Mr. Bonday has diligently pursued a *pro se* arbitration claim against his former employer, Nalco, pursuant to the company's standard arbitration agreement with its employees. At every turn, Nalco has refused to engage in the process it designed. Nalco insisted that the American Arbitration Association defer to Nalco's unilateral interpretation of the scope of its arbitration agreement, without any process before either an arbitrator or a court. Later, after the district court declined to enjoin the arbitration from proceeding, Nalco withdrew completely from the arbitration. After the arbitrator ruled in Mr. Bonday's favor, Nalco moved to vacate the award on the grounds that the dispute did not fall within the scope of the arbitration Agreement.

The district court ultimately vacated the award without a hearing on the grounds the parties had not agreed to arbitrate claims under the Employee Retirement Income Security Act ("ERISA") and also on the grounds that the arbitrator exceeded her powers by construing Mr. Bonday to raise an ERISA claim in the first place, a basis for vacatur Nalco did not assert. Because of the serious issues this case raises for an employee's ability to arbitrate against an employer under the employer's own dispute resolution proceedings, Mr. Bonday requests oral argument to fully answer the Court's questions.

# Table of Contents

Statement Regarding Oral Argument .......................................................... i

Table of Authorities................................................................................. iv

Statement Regarding Jurisdiction.......................................................... vi

Statement of the Issues ........................................................................... 1

Statement of the Case.............................................................................. 3

Standard of Review................................................................................ 17

Summary of the Argument .................................................................... 18

Argument ............................................................................................... 20

I.    The Parties Clearly and Unmistakably Agreed that the Arbitrator should De-
      cide the Scope of Issues Subject to Arbitration ............................. 22

II.   The Parties Agreed to Arbitrate All Federal Statutory Claims "Without Lim-
      itation"............................................................................................. 29

III.  The Arbitrator Did Not Exceed Her Powers in Construing Mr. Bonday's *Pro
      Se* Demand for Arbitration to Raise an ERISA Claim .................. 37

      A. Mr. Bonday's demand alleges facts showing discrimination in the admin-
         istration of rights under the Severance Plan, and thus in violation of
         ERISA ......................................................................................... 39

      B. Nalco had ample notice before the arbitration that Mr. Bonday had raised
         an ERISA claim and nevertheless refused to participate in the arbitration
         ..................................................................................................... 41

      C. Because Mr. Bonday was *pro se* and the arbitrator could have granted
         Mr. Bonday leave to amend his demand, the arbitrator's decision was

**proper under AAA rules** ...............................................................45

Conclusion........................................................................................48

Certificate of Compliance

Certificate of Service

# Table of Authorities

**Cases**

*AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*
　508 F.3d 995 (11th Cir. 2007).........................................................17

*AT&T Mobility LLC v. Concepcion*
　563 U.S. 333 (2011) .....................................................................29

*Attix v. Carrington Mortgage Services, LLC*
　35 F.4th 1284, 1299 (11th Cir. 2022)........................................19, 24

*Badgerow v. Walters*
　142 S. Ct. 1310 (2022)..............................................................43-44

*Bamberger Rosenheim, Ltd., (Israel) v. OA Dev., Inc., (United States)*
　862 F.3d 1284 (11th Cir. 2017) ....................................................24

*Davis v. Producers Agr. Ins. Co.*
　762 F.3d 1276 (11th Cir. 2014)......................................................17

*Davis v. Prudential Sec., Inc.*
　59 F.3d 1186 (11th Cir. 1995)...................................................41-42

*Erickson v. Pardus*
　551 U.S. 89, 94 (2007)..................................................................40

*First Options of Chi., Inc. v. Kaplan,*
　514 U.S. 938 (1995)................................................................18, 22

*Frazier v. CitiFinancial Corp., LLC*
　604 F.3d 1313 (11th Cir. 2010)......................................................46

*Gomez-Diaz v. United States,*
　433 F.3d 788 (11th Cir. 2005).......................................................40

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*

      552 U.S. 576 (2008)...............................................................46

*Howsam v. Dean Witter Reynolds, Inc.*
      537 U.S. 79 (2002)................................................................29

*Jackson v. Shakespeare Found., Inc.*
      108 So. 3d 587 (Fla. 2013)...................................................35

*JPay, Inc. v. Kobel*
      904 F.3d 923 (11th Cir. 2018)...............................17, 29, 34

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*
      460 U.S. 1 (1983)...........................................................30, 34

*Oxford Health Plans LLC v. Sutter*
      569 U.S. 564 (2013)..........................................................37-38

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
      559 U.S. 662 (2010) ............................................................29

*Terminix Intern. Co. LP v. Palmer Ranch Ltd. Partnership*
      432 F.3d 1327 (11th Cir. 2005).........................1, 18, 22-24

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys*
      807 F.3d 1258 (11th Cir. 2015).............................................17

*Vaden v. Discover Bank,*
      556 U.S. 49 (2009).................................................................43

**Statutes and Rules**

29 U.S.C. § 1140.......................................................13, 31, 37

American Arbitration Association Employment Arbitration Rules ... 4, 13, 18, 23, 45

Federal Arbitration Act, 9 U.S.C. § 1 et seq............................16, 37, 43-49

# Statement Regarding Jurisdiction

Appellee Nalco ("Nalco") filed its initial complaint seeking declaratory relief under the Declaratory Judgment Act, 22 U.S.C. § 2210, in the United States District Court for the Middle District of Florida on October 1, 2021. DE 1. Because Nalco did not allege a basis for jurisdiction, the district court dismissed Nalco's complaint without prejudice on November 11, 2021. DE 11. Nalco filed its first amended complaint on November 16, 2021, seeking declaratory relief under the 22 U.S.C. § 2210 and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and alleging jurisdiction under 28 U.S.C. § 1331 on the grounds that Mr. Bonday's demand for arbitration raised a claim under the Employee Retirement Income Security Act of 1974 ("ERISA"). DE 12. An arbitrator issued an award in Mr. Bonday's favor for the violation of ERISA § 510 on December 31, 2021, and Nalco filed a motion to vacate that award under 9 U.S.C. § 10 on January 25, 2022. DE 25 & 25-1. Nalco filed its second amended complaint, adding 28 U.S.C. § 1332(a) as a jurisdictional basis to support its motion to vacate, on May 27, 2022. DE 36. The district court granted Nalco's motion to vacate and motion for summary judgment, and denied Mr. Bonday's motion to dismiss, on September 22, 2022. DE 39. Mr. Bonday timely filed a notice of appeal *pro se* on October 17, 2022. DE 41. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

# Statement of the Issues

Nalco eliminated Mr. Bonday's position during a reorganization. After unsuccessfully seeking severance from Nalco under the company's Severance Plan, Mr. Bonday filed a *pro se* demand for arbitration. Construing Mr. Bonday's demand liberally in light of his *pro se* status, the arbitrator ruled that Mr. Bonday had alleged breach of contract for failing to pay severance, as well as a violation of the Employee Retirement Income Security Act ("ERISA") and age discrimination in violation of state and federal law. Believing the dispute fell outside the scope of the parties' arbitration agreement, Nalco chose not to participate in the arbitration. The arbitrator found in Mr. Bonday's favor on the ERISA claim only and awarded him $129,465.50. Nalco moved to vacate the arbitral award on the grounds that the dispute did not fall within the scope of the arbitration clause. The district court granted summary judgment for Nalco and vacated the award, but its decision raises three questions.

1. Under this Court's decision in *Terminix Intern. Co. LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327 (11th Cir. 2005), have the parties clearly and unmistakably agreed that an arbitrator shall decide the scope of issues subject to arbitration when the arbitration agreement incorporates arbitration rules that pro-

vide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement"?

2. Even if *de novo* review applies to the scope of the arbitration agreement, did the district court err in determining that ERISA claims are nonarbitrable under an agreement requiring the arbitration of "any and all claims or controversies alleging violations of federal, state, local or common law . . . arising out of or in any way related to the application for employment, employment or cessation of employment"?

3. Did the district court err in determining that the arbitrator exceeded her powers by construing Mr. Bonday's *pro se* demand for arbitration, and the factual allegations regarding discrimination in the administration of Nalco's severance plan therein, to raise an ERISA claim?

<u>**Statement of the Case**</u>

Ecolab, the parent company of Nalco-appellee Nalco, maintains a standard dispute resolution agreement with its employees, entitled "Ecolab Mediation and Arbitration Agreement" ("the Arbitration Agreement" or "Agreement"). DE 36-3. In the Agreement, Ecolab and its employees, including Mr. Bonday, agree that "[a]ll Disputes shall be finally and conclusively resolved by final and binding arbitration before a neutral third party." DE 36-3, ¶ 3. The Agreement defines "Dispute" in the following way:

> any and all claims or controversies alleging violations of federal, state, local or common law between an Associate and the Company (and vice versa) arising out of or in any way related to the application for employment, employment or cessation of employment with the Company, including all previously unasserted claims prior to the date of this Agreement. The term 'Dispute' includes, without limitation, claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963 and all amendments thereto and any other federal, state or local statute, regulation or common law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment, compensation, overtime, breach of contract, retaliation, whistleblowing, defamation or employment-related tort. *Id.* ¶ 2E.

The Agreement also excludes from the definition of "Dispute"

> claims related to: (i) workers' compensation benefits; (ii) unemployment compensation benefits; (iv) controversies over awards of benefits or incentives under the Company's stock option plans, employee benefits

plans or welfare plans that contain an appeal procedure or other procedure for the resolution of such controversies. *Id.*

Finally, the Agreement contains two provisions regarding the parties' agreement to arbitrate issues of arbitrability. First, the Agreement provides that "[t]he Arbitration will be conducted in accordance with the AAA [American Arbitration Association] Employment Arbitration Rules." *Id.* ¶ 10.B. Those rules, in turn, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Employment Arbitration Rules, ¶ 6.a, DE 18-1 at 125. The Agreement narrows this broad grant of authority to the arbitrator to decide questions of arbitrability by excluding "disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement." DE 36-3, ¶ 2.E. All other issues of arbitrability, including issues relating to the scope of issues submitted to arbitration, remain for the arbitrator under the terms of the Agreement and the AAA Employment Arbitration Rules incorporated into the Agreement.

On December 29, 2020 Mr. Bonday filed a *pro se* demand for arbitration with the American Arbitration Association ("AAA"), as provided for in ¶ 10B of the Agreement. In his demand for arbitration, Mr. Bonday alleged that in approximately 2014, Nalco began reorganizing and downsizing, offering severance packages to employees

who were terminated. DE 36-1 at 4.[1] Thereafter, Mr. Bonday was promoted to Global

Technical Director—Tissue Segment. *Id.* at 4-5. But in September 2019, Nalco's down-

sizing efforts reached Mr. Bonday's positon. As part of a "leveling" exercise, Nalco

eliminated a number of Director positions, including Mr. Bonday's. *Id.* at 5. Nalco

offered Mr. Bonday a lesser role as an Industry Technical Consultant (ITC), with re-

duced compensation, especially in the structure of bonuses. *Id.* Mr Bonday told Nalco

that he was not interested in the reduced role and requested a severance package. *Id.*

Mr. Bonday understood from the company's Severance Plan that he was entitled to a

severance package if his role with the company was reorganized or eliminated, as it

---

[1] The demand consisted of a two-page preprinted AAA intake form to be filled in by the claimant and three additional pages Mr. Bonday wrote entitled "Nature of the Claim. DE 36-1. At the top of the second page, the AAA form contained the following instructions: "In detail, please describe the nature of each claim. You may attach additional pages if necessary." *Id.* at 3. The form itself gives claimants only three lines. Mr Bonday wrote in that space:

> My role as Global Director of Tissues was eliminated and I was demoted to Senior ITC (a role I had never held) during a headcount reduction and reorganizing 'leveling' event. I requested severance at the time, but was denied. I am requesting arbitration with Nalco Water to follow the Ecolab Severance Policy and award me 36 weeks salary per the policy. Please see attached additional pages for details. *Id.*

The additional pages, which Mr. Bonday himself wrote and entitled "Nature of the Claim" contained the factual allegations above describing Nalco's denial of Mr. Bonday's request for severance, its efforts to prevent him from continuing his pursuit of a severance, and Nalco's discriminatory treatment among those whose roles as Directors it eliminated.

had been. *Id.* Moreover, both Mr. Bonday's immediate superior and others holding the same Director-level position as he received severance packages during this period of time. *Id.*

Nevertheless, Nalco denied Mr. Bonday's request for a severance. *Id.* Instead, Nalco offered to increase the compensation it had initially offered Mr. Bonday for the reduced role, although the bonus structure associated with the position would remain below what Mr. Bonday had previously earned. *Id.* In February and March of 2020, Mr. Bonday contested the denial of severance with Nalco's Ombudsman. *Id.* In April 2020, the Human Resources Director denied Mr. Bonday's request for a severance package. *Id.* Nalco's Vice President of Human Resources upheld the decision in May 2020. *Id.* Uninterested in being demoted and having exhausted his options within the company to obtain a severance package, Mr. Bonday left Nalco on June 1, 2020. *Id.*

In September 2020, Mr. Bonday became aware that after his departure several other individuals who had held Director roles had been given severance packages on the instructions of Nalco's Human Resources and Legal teams. *Id.* In particular, Mr. Bonday alleged that "[i]n September of 2020 I became aware that [Human Resources] had . . . offered severance packages to Rob Melchoirs and Bruce Barker." DE 18-1 at 5. Mr. Bonday alleged that:

[u]pon hearing of this further discrepancy, I reconnected with Ombuds-man Wendy Friede in September and she reconnected with [Vice President of Human Resources] Joel Pasiuk regarding the difference in treatment for severance packages. Joel (in conversations with Wendy in October) tried to indicate that I was never really a Director and was always just an ITC [Industry Technical Consultant] so I therefor [sic] did not merit a severance award. I have had several roles over 15 years including Program Manager, Senior Industry Development Manager, and Global Director Tissue, but I have never been an ITC (Industry Technical Consultant). *Id.*

Mr. Bonday believed that Nalco denied him severance and recharacterized his position in effort to keep him from leaving the company. He alleged that his superior at Nalco informed him that he was deemed "critical to the business . . . and at risk of leaving." *Id.* at 6. Thus, when Mr. Bonday indicated he wished to leave Nalco following his demotion, Nalco offered Mr. Bonday a 5% salary increase associated with the proposed new role of ITC. *Id.* Mr. Bonday, though, did not believe this new salary would make him whole. Nalco had already deemed Mr. Bonday "overpaid" in his Director role and this new salary would qualify as "extremely" overpaid for the lower-ranked role of ITC. *Id.* Because of the way in which salary bands for particular roles worked at Nalco, Mr. Bonday alleged that this structure would mean that "I will not have receive [sic] a change in base pay for likely 10 years." *Id.*

Instead of accepting his demotion and the lost future earnings, Mr. Bonday left the firm and filed his *pro se* demand for arbitration.

<u>Nalco Refuses to Participate in the Arbitration</u>

On January 19, 2021, Nalco sent a letter to the AAA, arguing that "the Mediation and Arbitration Agreement ("Agreement") between the parties does not provide for the arbitration of the claims raised in Mr. Bonday's Demand for Arbitration.." DE 18-1 at 161. The letter cited the exclusion in the Agreement for disputes "related to ... controversies over awards of benefits or incentives under the Company's stock option plans, employee benefits plans or welfare plans that contain an appeal procedure or other procedure for the resolution of such controversies...." *Id.*

On January 20, 2021, Larry Allston, a Finance Supervisor at the AAA, emailed both parties, requesting comment from Mr. Bonday on Nalco's letter. *Id.* at 193. Mr. Bonday responded, disputing Nalco's contention. *Id.* at 192. Consequently, Mr. Allston emailed both parties on Jannuary 26 indicating that the matter would proceed. Mr. Allston explained that:

> As a neutral administrative agency, it is not [the AAA's] role to interpret the parties' contract and determine arbitrability. Our role is only to determine whether or not the filing party met filing requirements contained in the Rules by filing a demand for arbitration accompanied by an arbitration clause providing for administration by the AAA under its Rules or by naming the AAA as the dispute resolution provider. Arbitrability issues are decided only by the arbitrator, once appointed, or a court of jurisdiction. *Id.* at 191-92.

He also requested that by February 2 Nalco pay the $2,200 filing fee, which the Agreement requires Nalco to pay. *Id.*, DE 36-3, ¶ 10.B.6.a.

Nalco refused to pay the fee. *Id.* at 185. Noting that "[t]he employer is expected to support the dispute resolution process that it mandates in its dispute resolution plan," Mr. Allston nevertheless moved to close the case "due to non-compliance by the employer" in failing to pay the fee. *Id.* at 185. Mr. Bonday objected, arguing that ¶6 of AAA Arbitration rules granted the arbitrator jurisdiction to rule on Nalco's objection. *Id.* at 185-86. Mr. Bonday then paid the fee himself so that the arbitration could proceed. *Id.* at 183-85. Mr. Allston reaffirmed at that time that the AAA would "follow any court order directing the manner in which the underlying arbitration should or should not proceed." *Id.* at 184. Barring a court order, though, Mr. Allston indicated again that the arbitrator could address any objections to arbitrability once appointed. *Id.*

In light of Mr. Bonday's *pro se* status, the AAA turned the matter over to its Pro Se Arbitration Administration Team, which attempted from March through July to schedule preliminary meetings with Nalco. *Id.* at 159, 181. During this time, Nalco's attorneys sent the Pro Se management team a series of increasingly strident emails demanding that the AAA defer to Nalco's unilateral interpretation of the Agreement without affording Mr. Bonday any further process. For example, on April 1, Rene Thorne responded to an email from one of AAA's Pro Se Managers with an email that said, in its entirety:

> In case it was not entirely clear from our numerous previous communications, AAA does not have jurisdiction over this claim. Accordingly, Ecolab will not be responding further. *Id.* at 181.

On July 7, Ms. Thornton responded to another email, writing, "As we have repeatedly and clearly informed AAA and Mr. Bonday, AAA does not have jurisdiction over this claim. Accordingly, Ecolab will not be participating in an arbitration." *Id.* at 159.

Having received nothing more than email communications from Nalco indicating that it objected to jurisdiction, the AAA appointed an arbitrator. *Id.* at 151. The AAA notified both parties that the arbitrator would hold a case management conference on August 27, 2021, at which the arbitrator would address Nalco's objections, treating its emails as a motion to dismiss. *Id.* at 152. Nalco did not appear at the conference and provided no explanation for its absence. *Id.* As such, the arbitrator deemed Nalco's objections waived. *Id.*; DE 37-4. The arbitrator entered a procedural order establishing a discovery schedule, filing deadlines, and scheduling a hearing on the merits for November 19. 18-1 at 152. The AAA notified both parties. *Id.* Nalco did not meet any of the discovery or filing deadlines in this first procedural order. *Id.* at 153.

The Initial Proceedings Before the District Court

On October 1, Nalco filed its initial complaint in the district court. DE 1. That complaint sought a declaratory judgment that Mr. Bonday's claims were nonarbitrable

under the Agreement. *Id*. at 4. On November 9, Nalco filed a motion for a temporary restraining order or, in the alternative, a preliminary injunction to prevent the arbitration hearing from occurring. DE 10. On November 11, the district court denied Nalco's motion. DE 11. Following this Court's case law, the district court held that arbitrating nonarbitrable claims does not constitute an irreparable injury because a party can always seek to vacate an award that rests on nonarbitrable claims. *Id*. at 5. Nalco also alleged irreparable harm due to its obligation under the Agreement to pay the filing fee to the AAA. *Id*. The district court rejected this argument because Nalco had already refused to make any payments to the AAA. *Id*. Finally, the district court dismissed Nalco's complaint without prejudice and with leave to amend because Nalco had failed to assert a basis for subject matter jurisdiction. *Id*. at 6.

The Arbitration

On November 15, Nalco filed a motion for a stay with the arbitrator, raising its jurisdictional objections with the arbitrator for the first time. DE 18-1 at 152. Nalco did not, however, notify the arbitrator that the district court had already denied its motion to enjoin the arbitration. *Id*. The arbitrator thus postponed the hearing scheduled for November 19. *Id*. Mr. Bonday provided the arbitrator a copy of the district court's initial order, at which point the arbitrator rescheduled the hearing. *Id*. at 153.

Nalco declined to provide the arbitrator any information regarding its availability, but asked that the "all deadlines be reset." *Id.*

In a second procedural order issued on November 23, the arbitrator did three things. First, she denied the motion for a stay as moot in light of the district court's denial of injunctive relief. *Id.* at 152. Second, she extended the time for Nalco to provide its witness lists and exhibits, while also acknowledging that "[t]his matter has been pending with AAA for almost a year now[, u]ntil now Respondent has intentionally chosen not to participate in this process [and] Respondent did not meet any of the deadlines previously set." *Id.* at 153.

Third, the arbitrator construed Mr. Bonday's demand for arbitration to raise claims under both ERISA and state and federal laws prohibiting age discrimination in employment. *Id.* at 152. The arbitrator pointed out that Mr. Bonday had:

> repeatedly stated that he was not treated the same as other similarly situated employees who were given the requested benefits. As noted by Respondent [Nalco] the plan itself was created pursuant to [ERISA]. As such, Claimant [Mr. Bonday] may be raising violations of ERISA for the disparate treatment. Claimant also recited his age, so he may also be claiming age discrimination under state or federal law. Therefore, even assuming, *arguendo*, Respondent is correct as to a breach of contract claim, it does not foreclose arbitration of other claims raised by Claimant, which are covered by the parties' arbitration agreement. *Id.* at 152-53.

On November 24, Nalco wrote to the AAA's Pro Se management team, protesting the arbitrator's decision and informing the AAA—for at least the third time—

that Nalco would not participate in the arbitration any further. *Id.* at 155-56. Consequently, the arbitrator scheduled the evidentiary hearing for December 7. *Id.* at 216.[2] Nalco did not appear at the hearing. DE 25-1.

The arbitrator issued her award on December 31, 2021. *Id.* In the award, the arbitrator agreed with Nalco that she lacked jurisdiction over Mr. Bonday's breach of contract claim. *Id.* at 4. She also found that Mr. Bonday had failed to produce evidence that showed age discrimination. *Id.* at 3.

The arbitrator found, however, that Nalco had violated Section 510 of ERISA, which provides that:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this title, section 3001, or the Welfare and Pension Plans Disclosure Act [(29 U.S.C. 301 et seq.)] or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this title, or the Welfare and Pension Plans Disclosure Act. 29 U.S.C. § 1140.

The arbitrator noted that "[t]hroughout the proceedings in this case, Claimant has steadfastly asserted that he was treated differently from his peers." DE 25-1 at 4. Relying on testimony from two Nalco employees who had the same role (Director) as Mr.

---

[2] The AAA Employment Arbitration Rules do not permit default judgments. *See* ¶ 29, DE 18-1 at 133 ("An award shall not be based solely on the default of a party. The arbitrator shall require the party who is in attendance to present such evidence as the arbitrator may require for the making of the award.").

Bonday, the arbitrator concluded that Nalco had indeed treated Mr. Bonday differently, offering severance to others at the Director level but not Mr. Bonday. *Id.* at 4-5 Relying on Mr. Bonday's testimony as well as that of his former supervisor, the arbitrator found that Nalco had not offered Mr. Bonday a severance because he was deemed critical to the company and the company did not want him to leave. *Id.* at 5.

The arbitrator thus awarded Mr. Bonday $122,870 in equitable relief under ERISA § 502. *Id.* at 6. The arbitrator also awarded Mr. Bonday the costs of the arbitration, which the Arbitration Agreement required Nalco to pay. *Id.* The total amount of the award was thus $129,465.50. *Id.* The arbitrator ordered Nalco to make payment by January 31, 2022, with six percent interest accruing on the total thereafter. *Id.*

<u>The Second District Court Action</u>

On November 16, 2021, Nalco filed its first amended complaint with the district court. DE 12. Although this was still a week before the arbitrator's procedural order construing Mr. Bonday to raise an ERISA claim (which was issued on November 23), Nalco invoked federal question jurisdiction under 28 U.S.C. § 1331 on the grounds that "this case is predicated on an action that arises under federal law. Specifically, Nalco seeks resolution in this action of an actual pending controversy between the parties as to whether Defendant has a right to arbitrate his claims, which arise from a health and welfare benefits plan created under the Employee Retirement

Income Security Act of 1974 ("ERISA")." *Id.* at 2. Mr. Bonday moved to dismiss, DE 15, while Nalco moved for summary judgment. DE 18.

On January 25, 2022 Nalco filed a motion to vacate the now-issued arbitral award on the grounds that the arbitrator's decision to rule on the scope of the issues subject to arbitration was arbitrary and capricious and in manifest disregard of the law. DE 25 at 11. Nalco motion to vacate focused on whether the parties had agreed to arbitrate arbitrability. *Id.* In particular, although it complained about the arbitrator's decision to construe Mr. Bonday as raising an ERISA claim, it did not seek vacatur on the grounds that the arbitrator's construction of Mr. Bonday's claim exceeded her powers. *Id.* On May 27, Nalco amended its complaint again, following leave to do so from the district court, to add diversity under 28 U.S.C. § 1332 as a basis for jurisdiction to support its motion to vacate. DE 36. Mr. Bonday renewed his motion to dismiss. DE 37.

On September 22, the district court entered an order denying Mr. Bonday's motion to dismiss, granting Nalco's motion for summary judgment, declaring Mr. Bonday's demand for arbitration nonarbitrable under the Arbitration Agreement, and vacating the arbitrator's award on the grounds that the arbitrator had exceeded her powers both by construing the demand for arbitration to raise an ERISA claim and by ruling on a claim that was not within the scope of the parties' Agreement. DE 39.

Recognizing that both the Supreme Court and this Court have recognized that § 10 of the FAA provides the exclusive grounds for vacatur, the district court rejected Nalco's argument that the award could be vacated as arbitrary and capricious and in manifest disregard of the law. DE 39 at 12 n.2. Instead, the district court treated Nalco's motion as seeking to vacate the award on the grounds that the arbitrator had exceeded her powers by ruling on a matter not within the scope of the arbitration agreement. *Id.*

With respect to arbitrating arbitrability, the district court held that the parties had not unmistakably agreed to have the arbitrator decide arbitrability, and hence the district court should review *de novo* whether Mr. Bonday's claim was within the scope of the Arbitration Agreement. *Id.* at 15.

The district court then held that, despite Mr. Bonday's *pro se* status, the arbitrator had exceeded her powers by construing Mr. Bonday as raising an ERISA claim because "Mr. Bonday specifically requested 'arbitration for [Nalco] to follow the [Severance Plan]' and for the arbitrator to 'award [him] 36 weeks salary per the policy.' The only time Mr. Bonday referenced a "difference in treatment for severance packages" was in explaining why he contacted Nalco again attempting to secure severance pay under the Severance Plan." *Id.* at 17. Finally, district court concluded that Mr.

Bonday's claim was not within the scope of the Arbitration Agreement's definition of "Dispute" in ¶ 2.E and hence was nonarbitrable. *Id.* at 19.

Mr. Bonday filed his notice of appeal *pro se* on October 17, 2022. DE 41.

<u>**Standard of Review**</u>

This Court reviews a district court's decision on a motion to vacate an arbitral award *de novo*, while reviewing its factual findings for clear error. *Davis v. Producers Agr. Ins. Co.*, 762 F.3d 1276, 1283 (11th Cir. 2014). This Court's review of the arbitration decision itself is extremely limited, "among the narrowest known to law." *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 807 F.3d 1258, 1271 (11th Cir. 2015) ("federal court's review of an arbitration award is highly deferential and extremely limited."). And, "[a]ny doubts concerning the scope of arbitrable issues—that is, doubts over whether an issue falls within the ambit of what the parties agreed to arbitrate—should be resolved in favor of arbitration." *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) (internal quotation marks omitted). Moreover, while a court reviews arbitrability issues *de novo* unless the parties have clearly and unmistakably committed arbitrability issues to the arbitrator, if the parties do assign arbitrability to the arbitrator,

"a court must defer to" that arbitrator's decision on that issue. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

The district court concluded that it should review arbitrability *de novo* because the parties had not clearly and unmistakably agreed that the arbitrator should decide arbitrability. DE 39 at 15. For the reasons given below, however, the parties's Agreement did clearly and unmistakably grant the arbitrator authority to rule on the scope of issues subject to arbitration under this Court's decision in *Terminix Intern. Co. LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1331-32 (11th Cir. 2005). Thus, the district court should have, and this Court should, defer to the arbitrator's determinations regarding the scope of the arbitration clause.

## Summary of the Argument

This Court should reverse for three reasons. First, the parties agreed that the arbitration shall be governed the AAA Employment Arbitration Rules. DE 36-3 ¶ 10.B. 1. Those rules, in turn, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." This Court has held in *Terminix Intern. Co. LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1331-32 (11th Cir. 2005) that this identical language grants the arbitrator authority to rule on arbitrability and thus

courts should defer to the arbitrator's determination of arbitrability issues. The language in the Agreement withdrawing disputes regarding "enforceability, revocability or validity" from the arbitrator's purview does not change this result. This Court has repeatedly distinguished between different arbitrability issues and has found that parties may commit some arbitrability issues, such as the scope of issues subject to arbitration, to the arbitrator while leaving others, such as the enforceability or validity of the arbitration agreement, for the court. *Attix v. Carrington Mortgage Services, LLC*, 35 F.4th 1284, 1299 (11th Cir. 2022). Here, the parties dispute is about whether Mr. Bonday's demand falls within the scope of the parties' concededly enforceable and valid agreement. Thus, this Court should defer to the arbitrator's decisions regarding the scope of issues subject to arbitration.

Second, even if this Court determines that *de novo* review of arbitrability is appropriate, it should still conclude that ERISA claims are arbitrable under the Agreement. Ecolab, Nalco's parent company, drafted an agreement for its employees requiring the arbitration of "any and all claims or controversies alleging violations of federal . . . law . . . arising out of or in any way related to the . . . cessation of employment." DE 36-3 ¶ 2.E. Having agreed to arbitrate with its employees any and all federal claims "without limitation," Nalco cannot then complain when its employees actually take it to arbitration over a federal statutory claim.

Finally, given Mr. Bonday's *pro se* status, the arbitrator was well within her powers to construe Mr. Bonday's factual allegations regarding his treatment as raising an ERISA claim. This issue is not one of arbitrability, as it does not implicate the parties' Agreement, but rather the actual claims alleged in Mr. Bonday's demand. As such, this Court should defer to the arbitrator's construction of Mr. Bonday's demand in its preliminary procedural order. Moreover, Nalco had ample notice that the demand had been so construed and still declined to participate in the arbitration. Nalco thus waived any further objections it might have to the arbitrator's procedural order by choosing not to participate in the arbitration. Finally, Nalco itself invoked the district court's subject matter jurisdiction on the basis that Mr. Bonday's claim arose under ERISA. It cannot then claim that Mr. Bonday did not raise an ERISA claim.

## Argument

This Court should reverse for three reasons. First, the parties clearly and unmistakeably agreed that the arbitrator should decide the scope of the issues subject arbitration. The arbitrator's decision that Mr. Bonday's ERISA claim is arbitrable is thus entitled to deference by the courts. Second, even if this Court applies *de novo* review to the scope of the Arbitration Agreement, ERISA claims are arbitrable under its terms. The plain text of the Arbitration Agreement requires the arbitration of "any and all claims or controversies alleging violations of federal, state, local or common

law . . . arising out of or in any way related to the application for employment, employment or cessation of employment [including] *without limitation*, claims, demands, or actions under . . . any other federal, state or local statute, regulation or common law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment, compensation, overtime, breach of contract, retaliation, whistleblowing, defamation or employment-related tort." DE 36-3 ¶ 2.E (emphasis added). In light of this Court's repeated instruction to liberally construe the scope of arbitration agreements, this clause is more than sufficient to encompass ERISA claims. Finally, under ordinary contract law principles, ambiguous contracts are construed against the drafter.

Third, the arbitrator was well within her powers to construe Mr. Bonday's factual allegations as raising an ERISA claim for three reasons. First, Mr. Bonday squarely alleged facts showing discrimination between himself and similarly situated employees, as well as a motive—his critical value to the company—for the company to seek to interfere with his efforts to obtain a severance and leave. Second, Nalco had notice that the arbitrator had construed Mr. Bonday's demand to include an ERISA claim at the outset of the arbitration. Nevertheless, Nalco declined to participate in the arbitration, thus waiving any objection to the procedural order. Moreover, Nalco's complaint alleged that the district court had federal question jurisdiction because "this

case is predicated on an action that arises under federal law" and specifically identified ERISA as the federal law in question. DE 36, ¶ 5. Nalco cannot allege that Mr. Bonday's claim arises under ERISA for jurisdictional purposes, but then argue that Mr. Bonday did not raise an ERISA claim.

Third, under the AAA rules to which Nalco agreed, the arbitrator could have allowed Mr. Bonday to amend his demand to explicitly include an ERISA claim. Given that and Mr. Bonday's *pro se* status, the arbitrator did not exceed her powers by simply construing the demand to raise an ERISA claim based on the facts alleged and providing notice of that construction to Nalco via a preliminary procedural order.

## I.   The Parties Clearly and Unmistakably Agreed that the Arbitrator should Decide the Scope of Issues Subject to Arbitration

Normally, courts decide issues of arbitrability *de novo*. *Terminix Intern. Co. LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1331-32 (11th Cir. 2005). The exception to this rule is when the parties have clearly and unmistakable agreed that the arbitrator should decide arbitrability. *First Options*, 514 U.S. at 944; *Terminix*, 432 F.3d at 1332. In *Terminix*, this Court held that the incorporation of AAA arbitration rules providing that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" constituted clear and unmistakeable agreement that the arbitrator

should decide arbitrability. *Id.* at 1332. The Court thus deferred to the arbitrator's determination of arbitrability. *Id.*

In this case, the Arbitration Agreement provides that any arbitration "will be conducted in accordance with the AAA Employment Arbitration Rules." DE 36-3, ¶ 10.B. These rules contain a provision identical to the one in *Terminix* (which dealt with the AAA Commercial Arbitration Rules): "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Employment Arbitration Rules, ¶ 6.a, DE 18-1 at 125. Thus, under *Terminix*, the district court should have deferred, and this Court should defer, to the arbitrator's determination regarding the scope of arbitrable claims.

To be sure, the Arbitration Agreement does contain an additional provision relevant to arbitrability, but one that does not change the conclusion that the scope of issues subject to arbitration is for the arbitrator to decide. The parties agreed that "[t]his Agreement does not apply to disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement. Such disputes can only be resolved by a court of competent jurisdiction." DE 36-3, ¶ 2.E. The Agreement also provides that it prevails over the AAA Rules to the extent of any inconsistency. DE 36-3, ¶ 10.B.

This provision indicates that arbitrability issues related to the enforceability and validity of the Arbitration Agreement are for the Court to decide, but, in light of the Agreement's incorporation of the AAA Rules and this Court's decision in *Terminix*, the scope of arbitrable issues remains for the arbitrator to decide. This Court has repeatedly distinguished between these two different kinds of arbitrability issues. *Bamberger Rosenheim, Ltd., (Israel) v. OA Dev., Inc., (United States)*, 862 F.3d 1284, 1288 (11th Cir. 2017) (Arbitrability issues "include questions such as whether the parties are bound by a given arbitration clause, or whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.") (quotation omitted); *Attix v. Carrington Mortgage Services, LLC*, 35 F.4th 1284, 1299 (11th Cir. 2022) (Issues of scope go to "what set of disputes the arbitration agreement covers," while issues of validity and enforceability go to "whether the parties have entered into a legally operative arbitration agreement that is enforceable under law.").

Moreover, in *Attix*, this Court agreed that in principle an arbitration clause might delegate some issues of arbitrability to the arbitrator while reserving some for the courts. *Id.* at 1300 ("Were we to adopt Attix's reading of the parties' delegation clause, we agree with Attix about what would follow: the delegation clause would function as a "partial" delegation sending most questions of arbitrability to an arbitrator, but not questions about enforceability . . ."). That is the case here. *Terminix* makes

24

clear that the parties' agreement to subject their arbitration to AAA rules, which grant the arbitrator jurisdiction to decide issues of the existence, scope and validity of the arbitration agreement, commits those arbitrability issues to the arbitrator for resolution. The carveout in ¶ 2.E. of the Agreement removes issues of enforceability and validity, but not issues related to the scope of the arbitration clause.

Nor is there any doubt that the dispute about the arbitrability of Mr. Bonday's ERISA claim is a dispute about the scope of the arbitration clause. The question is: does the definition of "Dispute" in ¶ 2.E. of the Arbitration Agreement include ERISA claims? Although Nalco has repeatedly pointed to the carveout for disputes regarding enforceability and validity, it has never argued that the Arbitration Agreement is unenforceable or invalid. Hence, the carveout for arbitrability issues related to enforceability and validity does not apply in this case. Thus, the district court should have deferred to the arbitrator's construction of the scope of claims submitted to arbitration.

The district court erred in reaching the opposite conclusion by reading the carveout for enforceability and validity in ¶ 2.E. of the Agreement to mean that the Agreement "does not apply to disputes regarding...any portion of the Agreement." DE 39 at 16. In other words, the district court held that a provision which says that "[t]his

Agreement does not apply to disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement," DE 36- 3, ¶ 2.E., means that "this Agreement does not apply to disputes regarding the enforceability, revocability or validity of the Agreement, nor does this Agreement apply to disputes regarding any portion of this Agreement."

This district court's reading of the provision does not accord with either commonsense or grammatical sense. With respect to the former, the arbitrator's construction of the clause says that if a challenge is framed as one to the entire Arbitration Agreement, the courts should decide issues of enforceability, revocability, and validity, with other arbitrability issues left to the arbitrator under the AAA rules. But if the challenge is framed as one to only to a portion of the Arbitration Agreement, then all arbitrability issues are for the courts to decide. Why, though, would the parties' agreement on the division of authority between the courts and the arbitrator differ depending on whether the challenge is framed as one to the entire Arbitration Agreement or only a portion of it? Moreover, why would the parties contract for broader judicial review of challenges to portions of the Arbitration Agreement, but narrow judicial review in the case of challenges to the entire Agreement? Such a system would allow parties to circumvent limits on judicial review of challenges to the entire Agreement by simply framing them as challenges to individual provisions of the Agreement.

These puzzles are resolved by giving the provision is commonsense meaning: that disputes regarding the enforceability, revocability, and validity of *both* the Agreement and any portion of the Agreement are for the courts, and other arbitrability issues such as the scope of the claims submitted to arbitration are for the arbitrator pursuant to the Agreement's incorporation of the AAA rules.

This commonsense reading also makes the most sense grammatically. The provision is most naturally divided into two parts. The first part says that "This Agreement does not apply to disputes regarding the enforceability, revocability or validity of . . ." The second portion answers the question "of what?": "of the Agreement or any portion of the Agreement." There is no punctuation, such as a comma, or other indication that "any portion of the Agreement" is not subject to the same limitations regarding "enforceability, revocability or validity of" as disputes about the entire Agreement. Because no preposition appears before "any portion of the Agreement, the preposition "of" modifies both "the Agreement" and "any portion of the Agreement" to create a single prepositional phrase. The phrase preceding the preposition, "disputes regarding the enforceability, revocability or validity of" thus applies to the entire prepositional phrase.

In other words, the most natural reading of the carveout from the AAA rules grant of jurisdiction to the arbitrator to address arbitrability is that it applies to "disputes regarding the enforceability, revocability and validity of the Agreement" and that it applies to "disputes regarding the enforceability, revocability or validity of . . . any portion of the Agreement." The provision does *not* say: "This Agreement does not apply to disputes regarding the enforceability, revocability or validity of the Agreement or to disputes regarding any portion of the Agreement."

Once one correctly reads the carveout for "disputes regarding enforceability, revocability and validity," there is no question that the scope of the issues subject to arbitration is for the arbitrator to decide. The AAA Rules incorporated into the Agreement grant the arbitrator broad authority to resolve both of these kinds of arbitrability issues. Specifically, they grant the arbitrator authority to to rule on issues of the existence and validity of an arbitration agreement, as well as the scope of any arbitration agreement. AAA Employment Arbitration Rules, ¶ 6.a, DE 18-1 at 125. The Agreement only withdraws from the arbitrator "disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement." DE 36-3, ¶ 2.E. Nalco has never argued that the Agreement is invalid, unenforceable, or has been revoked, nor did the district court make any findings in that regard. Hence, the question whether Mr. Bonday's ERISA claim falls within the scope of issues subject to

arbitration under the Agreement is for the arbitrator to decide. This Court should thus defer to the arbitrator's decisions regarding the scope of arbitrable issues.

## II.     The Parties Agreed to Arbitrate All Federal Statutory Claims "Without Limitation"

Even if this Court decides that *de novo* review of the arbitrator's decision regarding the scope of arbitrable claims is appropriate, ERISA claims are arbitrable under the plain text of the Agreement. As both this Court and the Supreme Court have repeatedly stated, the Federal Arbitration Act "reflects both a liberal federal policy favoring arbitration and the fundamental principle that atbiration is a matter of contract. Where the parties have agreed to arbitrate their dispute, the job of the courts – indeed, the obligation – is to enforce that agreement." *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) and *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)) (internal quotations omitted).

Often, the scope of the issues the parties agreed to arbitrate may be ambiguous. This Court has explained that when "a contract is ambiguous or silent on the parties' intent arbitrate a *particular* question, we work from a set of default presumptions, laid out by the Supreme Court." *JPay, Inc.*, 904 F.3d at 929 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002))(emphasis in original). "Any doubts concerning the scope of arbitrable issues – that is, doubts over whether an issue falls within the

ambit of what the parties agreed to artbirate – should be resolved in favor of arbitration." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.* 460 U.S. 1, 24-25 (1983).

This Court's repeated instruction to resolve doubts about whether a particular issue is arbitrable in favor of arbitrable is decisive. The arbitration clause is best read to require arbitration of "any and all federal" claims related to employment, "without limitation," and Nalco itself has consistently argued that Mr. Bonday's claim arises under ERISA. To the extent that there is any ambiguity, under this Court's precedents that ambiguity must be resolved in favor of arbitration.

The Agreement provides that "All Disputes shall be finally and conclusively resolved by final and binding arbitration before a neutral third party." DE 36-3, ¶ 3. The Agreement defines "Dispute" to mean:

> any and all claims or controversies alleging violations of federal, state, local or common law . . . arising out of or in any way related to . . . *cessation of employment with the Company,* . . . The term "Dispute" includes, *without limitation,* claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963 and all amendments thereto and any other federal . . . statute . . . regarding employment, employment discrimination, the terms and conditions of employment, termination of employment, compensation, overtime, breach of contract, retaliation, whistleblowing, defamation or employment-related tort. DE 36-3, ¶ 2.E (emphasis added).

ERISA claims, especially those tied to a severance plan, are unambiguously covered by this definition of "Dispute." ERISA is a federal statute. Section 510 of ERISA provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the prupose of interfering with the attainment of any right to which such participant may become entitled under the plan. 29 U.S.C. § 1140.

A claim that Nalco discriminated against Mr. Bonday in assessing his eligibility for severance and interefered with his efforts to obtain severance under Nalco's severance plan in violation of Section 510 of ERISA is thus a "claim[] or controvers[y] alleging violations of federal . . . law . . . arising out of or . . . related to the cessation of employment with the Company." Such a claim also alleges a violation of a "federal . . . statute . . . regarding employment, employment discrimination, . . ., the termination of employment, [and] compensation." DE 36-3, ¶ 2E.

The broad language of the first two sentences of ¶ 2E also make clear that these two sentences control over any arguably conflicting language elsewhere in the Agreement. Most importantly, the second sentence of ¶ 2E provides that the term "Dispute" includes, "*without limitation,* . . . any other federal . . . statute . . . regarding employment, employment discrimination, . . ., termination of employment, [and] compensation." *Id.* The phrase "without limitation" makes clear that any exclusions from

the definition of "Disputes" elsewhere in the Agreement do not limit the arbitrability of claims governed by the second sentence of ¶ 2E. The language of the first sentence of ¶ 2E uses similarly broad language, referring to "*any and all* claims or contrveries alleging violation of federal . . . law . . . arising out of *or in any way related to . . .* cessation of employment with the Company." These all-encompassing language indicates the parties' intent to arbitrate all federal employment law claims.

The district court concluded that Mr. Bonday's claims are not within the scope of the parties' agreement based on the third sentence of ¶ 2E. That sentence provides:

> "Dispute" does not include claims related to: (i) workers' compensation benefits; (ii) unemployment compensation benefits; (iv) controversies over awards of benefits or incentives under the Company's stock option plans, employee benefits plans or welfare plans that contain an appeal procedure or other procedure for the resolution of such controversies; (v) an alleged violation of the National Labor Relations Act ("NLRA"); (vi) disputes that may not be subject to a predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act; . . .

Nalco's Severance Plan is an "employee benefits plan[] . . . that contain[s] an appeal procedure. Mr. Bonday's claim alleging breach of the Severance Plan is thus nonarbitrable under the Agreement, as the arbitrator found. DE 25-1 at 4.

But the nonarbitrability of his breach of contract claim does not mean that his federal statutory claim for discrimination is nonarbitrable. The third sentence of ¶ 2E cannot be read in a vacuum. Instead, it must be read in the context of the two

sentences that came before. Because those sentences make any and all federal claims related to employment arbitrable "without limitation," federal claims are arbitrable notwithstanding the limitation contained in the third sentence. Put differently, the arbitration clause is best read as distinguishing between statutory claims, which are arbitrable, and contract claims related to, *inter alia*, benefits plans, which are not. In the event of conflict, the Agreement provides that arbitrability of federal claims applies "without limitation," i.e., it prevails over limitations elsewhere in the Agreement.

The arbitrability of ERISA claims is confirmed by the two kinds of statutory claims that are excluded in the third sentence of ¶ 2E: claims alleging a violation of National Labor Relations Act and those that may not be subject to a predispute arbitration agreement under the Dodd-Frank Act. This reference makes clear that in drafting ¶ 2E, Nalco knew how to exclude specific federal statutory claims from the scope of arbitrable claims. Yet it chose not to exclude ERISA claims specifically. Combined with the parties' stated intent to arbitrate any and all federal employment claims "without limitation," this omission of ERISA from the list of exclusions leaves little doubt that ERISA claims are arbitrable under the best reading of the parties's agreement.

At worst, ¶ 2E is ambiguous with respect to ERISA claims. Even if one concedes for the sake of argument that the third sentence excludes ERISA claims related to employee benefit plans, the first two sentences clearly make ERISA claims connected to the cessation of employment arbitrable. This Court and the Supreme Court have repeatedly instructed that ambiguities about the scope of issues subject to arbitration in favor of arbitration. *See, e.g., JPay, Inc.*, 904 F.3d at 929 ("Any doubts concerning the scope of arbitrable issues – that is, doubts over whether an issue falls within the ambit of what the parties agreed to artbirate – should be resolved in favor of arbitration.") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.* 460 U.S. 1, 24-25 (1983).The result of a conflict between the first two sentences of ¶ 2E and the third sentence would be that the provision favoring arbitration would prevail.

Ordinary state law contract principles dictate the same result. "An ambiguous term in a contract is to be construed against the drafter." *City of Homestead v. Johnson*, 760 So.2d 80, 84 (Fla.2000). The title of the Agreement—"Ecolab Mediation and Arbitration Agreement," DE 36-3 at 2—makes clear that the Agreement is Ecolab's, and hence Nalco's. Consequently, any ambiguities in the Agreement should be construed against Nalco.

In reaching the opposite conclusion, the district court erred in two respects. First, because it had concluded that the arbitrator exceeded her powers in construing Mr. Bonday as raising an ERISA claim, the district court privileged the third sentence of ¶ 2E limiting the scope of arbitrable disputes over the broader and controlling language in the first two sentences of ¶ 2E that make any and all federal claims "arising out of or in any way related to" employment, the cessation of employment, and compensation, "without limitation." For example, the third sentence excludes from the scope of the agreement "claims related to [the specified categories]." The district court cited the Supreme Court of Florida for the proposition that "the addition of the words 'relating to' broadens the scope of an arbitration provision to include those claims that are described as having a 'significant relationship' to the contract. De 39 at 19 (citing *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013). The district court reasoned that, when used in a clause narrowing the scope of an arbitration agreement, the term "related to" must similarly expand the set of excluded claims. *Id.*

This holding is correct with respect to Mr. Bonday's breach of contract claim. However, the arbitrator herself had already found that lacked jurisdiction over Mr. Bonday's breach of contract claim. DE 25-1 at 4. The arbitrability of the breach of contract claim was thus not in dispute before the district court. And with respect to

Mr. Bonday's ERISA claim, the district court's reasoning ignores the even broader language contained in the first two sentences of ¶ 2E ("in any way related to" and "without limitation").

Second, the district court held that even if Mr. Bonday submitted an ERISA claim, that claim is not within the scope of the Agreement because ERISA claims are "inextricably intertwined with the Severance Plan, which is not a 'Dispute' subject to arbitration" under the Agreement. DE 39 at 20. This reading of ¶ 2.E privileges the third sentence over the first two sentences. But the third sentence is controlled by the first two sentence of ¶ 2.E., which apply "without limitation." Since Mr. Bonday's ERISA claim is covered by the plain terms of the first two sentences, which expressly prevail over subsequent limitations, and because ambiguities are resolved in favor of arbitration under this Court's precedents, the ERISA claim is within the scope of the parties' Agreement.

Nor is it the case that Mr. Bonday's claim for severance, which the arbitrator found she did not have jurisdiction over, is inextricably bound up with his ERISA claim. ERISA § 510, which the arbitrator found Nalco violated, does not require showing that Nalco breached the terms of the Severance Plan. It is sufficient for Mr. Bonday to show that Nalco "discriminate[d] against [him] for the purpose of interfering with the attainment of any right to which [he] *may become* entitled . . ." 29 U.S.C.

§ 1140 (emphasis added). In other words, § 510 does not require showing a breach of the Severance Plan. It only requires showing that Nalco discriminated against Mr. Bonday in his efforts to obtain a right to which he might (or might not) be entitled.

Thus, the Court should defer to the arbitrator's resolution of the scope of issues subject to arbitration. But even if the Court does, the plain text of the Agreement indicates that the parties agreed to arbitrate all federal statutory claims related to employment and the termination thereof—a scope that easily encompasses Mr. Bonday's ERISA claim.

## III. The Arbitrator Did Not Exceed Her Powers in Construing Mr. Bonday's *Pro Se* Demand for Arbitration to Raise an ERISA Claim

"Under the FAA, courts may vacate an arbitrator's decision only in very unusual circumstances. That limited judicial review . . . maintains arbitration's essential virtue of resolving disputes straightaway. If parties could take full-bore legal and evidentiary appeals, arbitration would become merely a prelude to a more cumbersome and time-consuming judicial review process." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568-69 (2013) (internal citations and quotations omitted). A party seeking vacatur under § 10(a)(4) "bears a heavy burden. It is not enough to show that the arbitrator

committed an error—or even a serious error." *Id.* (internal quotations omitted). Instead, as long as the arbitrator even arguably construed the documents submitted to it, the award must stand. *Id.*

Here, Nalco seeks to create just the kind of burdensome judicial review that the Supreme Court and this Court have said is forbidden under the FAA. Moreover, Nalco does so by challenging a preliminary procedural decision by the arbitrator that Nalco declined to challenge before the arbitrator herself. Mr. Bonday's demand for arbitration alleged that he was discriminated against in his efforts to obtain a severance package. Because he was *pro se*, Mr. Bonday did not plead specific specific statutes that this conduct violated. But in a preliminary procedural ruling that set out the issues that would comprise the merits of the arbitration as well as the schedule for the arbitration, the arbitrator announced that she would construe the facts alleged in Mr. Bonday's demand to raise claims for violations of ERISA and state and federal statutes prohibiting age discrimination. This action did not exceed the arbitrator's powers for three reasons. First, the facts alleged in Mr. Bonday's demand included claims that Nalco had discriminated among himself and similarly situated employees in deciding who was entitled to severance, and also alleged a motive the discrimination. Second, the arbitrator's decision gave the Nalco ample notice of Mr. Bonday's ERISA claim at the outset of the proceedings. Indeed, Nalco itself argued that the district court had

jurisdiction over its complaint precisely because Mr. Bonday's demand raised a claim under ERISA. Third, at the time the arbitrator so construed Mr. Bonday's demand, the AAA rules under which the arbitration was conducted would have allowed the arbitrator to grant Mr. Bonday leave to amend his demand to explicitly state that he was raising an ERISA claim. Because he was *pro so*, simply construing his demand to raise the claim based on his factual allegations was therefore not improper.

### A. Mr. Bonday's demand alleges facts showing discrimination in the administration of rights under the Severance Plan, and thus in violation of ERISA

The arbitrator's procedural decision of November 23, 2021, construing Mr. Bonday to raise an ERISA claim is not erroneously, let alone seriously so. The arbitrator's decision to treat Mr. Bonday as raising an ERISA claim rested on the fact that Mr. Bonday "repeatedly stated he was not treated the same as other similarly situated employees who were given the requested benefits. . . . As such, Claimant may be raising violations of ERISA for the disparate treatment." DE 18-1 at 152. This reading of Mr. Bonday's complaint both referenced facts alleged in Mr. Bonday's complaint and was appropriate in light of his *pro se* status.

The underlying allegations in Mr. Bonday's demand supporting the arbitrator decision include his allegation that Nalco "had (well after the leaving exercise) offered

severance packages to Rob Melchoirs and Bruce Barker (both North American Direc-tors leveled down to Senior ITC level) per instructions from Nalco HR and legal." DE 36-1 at 5. Moreover, Mr. Bonday alleged that Nalco attempted to dissuade him from pursuing a severance by arguing that he had never held a Director position, despite the fact that he had held such a position for a number of years. *Id.* at 5. Moreover, Mr. Bonday alleged a motive for why Nalco would wish to deter him specifically from from taking a severance package and leaving: Nalco viewed him as "critical to the busi-ness . . . and at risk of leaving." *Id.* at 6.

These facts are more than enough to support the arbitrator's decision to con-strue Mr. Bonday's demand as raising an ERISA claim in light of his *pro se* status. "A document filed *pro se* is to be liberally construed and a *pro se* complaint, however in-artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers, . . . Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted); *see also Gomez-Diaz v. United States*, 433 F.3d 788, 791 (11th Cir. 2005). If this liberal standard applies in federal court, it surely applies to at least the same degree, if not more so, in arbitration—a type of dispute resolution designed to limit procedural costs and inefficiencies.

## B. Nalco had ample notice before the arbitration that Mr. Bonday had raised an ERISA claim and nevertheless refused to participate in the arbitration.

Nalco had ample notice that Mr. Bonday had raised an ERISA claim and yet—on at least three separate occasions—it declined to participate in the arbitration proceedings. Having had notice of Mr. Bonday's ERISA claim and having declined the opportunity to address its concerns to the arbitrator during the course of the arbitration, Nalco cannot now complain that the arbitrator exceeded her powers by construing Mr. Bonday to raise such a claim.

In concluding that the arbitrator exceeded her powers, the district court relied on this Court's decision in *Davis v. Prudential Sec.*, Inc., 59 F.3d 1186 (11th Cir. 1995). In that case, in their final award that arbitrators made an award regarding attorneys' fees, deciding that each party should bear its own costs. However, neither party had raised the issue of attorneys' fees at any point during the proceedings. *Id.* at 1195. Notably, although this Court agreed that the arbitrators exceeded their powers by thus making an award on attorneys' fees, it allowed for the possibility that the parties could have introduced the attorneys' fees issue after the claim was filed. *Id* ("The Statement of Claim makes no request for attorneys' fees, *and neither party presented evidence or argument on the issue.*) (emphasis added). The problem was that the parties *never* raised

the issue of attorneys' fees during the arbitration, not that the claim itself did not raise the issue.

The problem in cases like *Davis* is the lack of notice. If arbitrators resolve an issue not submitted to them, then the parties have no opportunity to brief the issue and present their arguments to the arbitrators. They are, in effect, denied the basic chance to present their case.

Nalco, however, was most certainly not denied the opportunity to present its case. The arbitrator's procedural decision construing the award to include an ERISA claim put Nalco on notice before any merits proceedings had occurred that arbitrator would consider an ERISA claim. DE 18-1 at 152. Indeed, as the arbitrator noted in her decision, Nalco itself pointed out to the arbitrator in its motion for a stay of arbitration that the Severance Plan was created under ERISA, *Id.*, and thus ERISA claims might apply to in addition to any breach of contract claims. Instead of objecting, Nalco informed the AAA on at least three separate occasion that it would not participate in the arbitration. DE 18-1 at 181, 159, 155. The last of these withdrawals took place on November 24, 2021—the day after the arbitrator issued her procedural order construing Mr. Bonday's demand. In its letter to the AAA, Nalco specifically noted that "[w]e write in response to the arbitrator's order, dated November 23, 2021," *id.* at 155,

making clear it withdrew before any merits proceedings in full knowledge of the claims that it faced in arbitration.

Even more tellingly, Nalco conceded that Mr. Bonday's demand raises an ERISA claim in order to get into federal court. The Supreme Court has made clear that the FAA does not create jurisidiction over the causes of action that it creates. *Badgerow v. Walters*, 142 S. Ct. 1310, 1314 (2022). Instead, some independent basis for jurisdiction must exist. In motions to compel arbitration under § 4 of the FAA, the Supreme Court has said that the FAA authorizes "look through" jurisdiction. *Id.*; *Vaden v. Discover Bank*, 556 U.S. 49 (2009). Under this approach, if the district court would have had jurisdiction over the underlying dispute subject to arbitration—for example, if the dispute presents a federal question—then the district court has subject matter jurisdiction over the motion to compel. *Badgerow*, 142 S. Ct. at 1314. If a Nalco cannot identify an independent jurisdictional basis, by contrast, "the action belong in state court." *Id.* at 1316.

In its initial complaint, Nalco failed to identify any basis for jurisdiction at all. DE 1. Consequently, the district court dismissed the complaint. DE 11. Faced with the need to identify a jurisdictional basis, Nalco opted to allege federal question jurisdiction under 28 U.S.C. § 1331. DE 12, ¶ 5. Relying on look-through jurisdiction to support its pre-arbitration motion that the dispute was nonarbitrable, Nalco then had

to identify a federal claim that Mr. Bonday had raised over which the district court would have had jurisdiction "save for" the arbitration agreement. 9 U.S.C. § 4. Nalco identified ERISA. DE 12, ¶ 5.

Nalco could not have alleged a federal question if it thought the only claim Mr. Bonday had properly raised in his demand for arbitration was a breach of contract claim based on the Severance Agreement. Such a claim would be a state law contract claim and thus would not support federal question jurisdiction. Instead, by refiling in federal court, rather than moving to state court, Nalco conceded that Mr. Bonday had properly raised an ERISA claim. Moreover, it did so when it filed its first amended complaint on November 16, 2021, DE 12—a week before the arbitrator issued her procedural order on November 23.

Significantly, Nalco repeated its claim that ERISA provided a basis for exercising federal question jurisdiction even after it amended its complaint again to add diversity jurisdiction under 28 U.S.C. § 1332 as an alternative jurisdictional basis. Nalco had to amend its complaint because three things had happened since it filed its first amended complaint: 1) the arbitrator had issued her award; 2) Nalco moved to vacate that award, and 3) the Supreme Court issued its decision in *Badgerow* holding that look through jurisdiction—and thus a federal question in the underlying arbitration dispute—is not available to support jurisdiction over a motion to vacate under § 10 of

the FAA. 142 S. Ct. at 1317-18. Nalco thus needed to allege diversity jurisdiction in order to support jurisdiction over its motion to vacate. But in so doing, Nalco did not abandon its assertion, made well before the award was issued, that his demand presented a federal question arising under ERISA.

There can thus be no doubt that Nalco knew before any substantive proceedings on Mr. Bonday's claims began that the arbitration would involve Mr. Bonday's ERISA claim. Nalco cannot use the fact that it chose not to participate in the arbitration to claim surprise that the arbitrator resolved the claims she told Nalco, and that Nalco told the district court, were raised by Mr. Bonday's demand for arbitration.

### C. Because Mr. Bonday was *pro se* and the arbitrator could have granted Mr. Bonday leave to amend his demand, the arbitrator's decision was proper under AAA rules

The arbitrator's preliminary procedural decision construing Mr. Bonday's demand in no way prejudiced Nalco's ability to defend itself in the arbitration. The AAA Employment Arbitration Rules, which the parties agreed would govern the arbitration, provide that "[a]fter the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator." AAA Employment Arbitration Rules, ¶ 5, DE 18-1 at 125. Thus, the arbitrator could have allowed Mr. Bonday to amend his claim to explicitly state an ERISA claim. Doing so

would not have required any new factual allegations, since the arbitrator had determined that Mr. Bonday's allegations of discrimination were sufficient to state a claim under ERISA. DE 18-1 at 152. It would simply have been a matter of naming the statute in the demand. Because Mr. Bonday was *pro se*, the arbitrator instead provided Nalco the requisite notice in its preliminary procedural order. *Id.* But since the arbitrator had the discretion to allow an amended claim, this construction of the claim is not erroneous, let alone the kind of extraordinary and serious error that would justify vacatur under § 10(a)(4) of the FAA.

Indeed, the arbitrator showed no more solicitude for Mr. Bonday than the district court showed for Nalco in the proceedings below. The district court twice allowed Nalco to amend its complaint in order to correctly allege jurisdiction. DE 11; DE 35. Moreover, Nalco moved to vacate the award on the grounds that the arbitrator's decision was arbitrary and capricious in manifest disregard of the law. DE 25 at 11. As the district court correctly noted, these grounds for vacatur have not been available since the Supreme Court's decision in *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), holding that the grounds for vacatur listed in § 10 of the FAA are exclusive. *See also Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1324 (11th Cir. 2010).

Finally, although Nalco complained in the factual section of its motion to vacate that the arbitrator had "contrived" Mr. Bonday's ERISA claim, Nalco *did not argue*

that the arbitrator's decision to construe Mr. Bonday's demand to raise an ERISA claim constituted the kind of error that would justify vacatur on the grounds that it exceeded the arbitrator's powers. *See generally* DE 25. Rather, Nalco confined its legal arguments to the claim that the arbitrator could not proceed with the arbitration until a court had decided that the dispute was arbitrable. DE 25 at 11-15. Despite the fact that Nalco's motion to vacate did not raise the issue, the district court decided to rule on whether the arbitrator had exceeded her powers by construing Mr. Bonday's demand as including an ERISA claim. Indeed, the district court cancelled the hearing on Nalco's motions and Mr. Bonday's cross-motions and decided the case without ever providing Mr. Bonday any notice that it intended to construe Nalco's argument for vacatur as raising a claim that the arbitrator had exceeded her powers under §10(a)(4) by treating him as having raised an ERISA claim.

The district court's decision to rule on whether the arbitrator had exceeded her powers by liberally construing Mr. Bonday's demand thus constituted an abuse of discretion. But if the district court did not abuse its discretion, then surely the arbitrator was within her discretion in construing Mr. Bonday's demand for arbitration to include an ERISA claim and providing actual notice of the ERISA claim before any merits-related hearings occurred.

<u>Conclusion</u>

Nalco's decision not to arbitrate the ERISA claim was entirely its own, and the consequences of that decision are its to bear. It could have participated in the arbitration and defended the ERISA claim had it so wished. Instead, it rolled the dice in the hopes that the federal courts would agree that Mr. Bonday's ERISA claim fell outside the scope of the parties' arbitration agreement. Because the parties clearly and unmistakably agreed to let the arbitrator decide the scope of arbitrable issues, because ERISA claims are arbitrable under the express terms of the parties' arbitration agreement and under this Court's precedent, this Court should reverse, and because the district court did not err—let alone make the kind of grave error that would warrant vacatur—in liberally construing Mr. Bonday's *pro se* demand for arbitration, Mr. Bonday respectfully asks this Court to:

**Reverse** the district court's judgment in Nalco's favor in its entirety and;

**Remand** to the district court with instructions to enter judgment in Mr. Bonday's favor and confirm the arbitration award. § 9 of the FAA requires confirmation of an arbitral award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Because no grounds for vacatur exist, Mr. Bonday is entitled to have the award confirmed.[3]

---

[3] Because it resolved the issue below on Nalco's motion for summary judgment and motion to vacate, the district court should have treated—and on remand should

Date: November 28, 2022                    Respectfully submitted,

/s/ Timothy Meyer
Timothy Meyer
Duke University School of Law
210 Science Drive
Durham, NC 27708
meyer@law.duke.edu
(510) 928-1439

---

treat—Mr. Bonday's *pro se* motions opposing Nalco as cross-motions for summary judgment and to confirm the award.

## **Certificate of Compliance**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 11,889 words, excluding the parts of the brief carved out by Fed. R. App. P. 32(a)(7)(B)(iii) and 11th Cir. R. 32-4.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Goudy Old Style font.

/s/ Timothy Meyer
Timothy Meyer
Duke University School of Law
210 Science Drive
Durham, NC 27708
meyer@law.duke.edu
(510) 928-1439

**Certificate of Service**

I, Timothy Meyer, certify that I served this Appellant's Opening Brief via the Court's ECF system on November 28, 2022, and that I mailed 4 copies to the Clerk of the Court on the same date.

/s/ Timothy Meyer
Timothy Meyer
Duke University School of Law
210 Science Drive
Durham, NC 27708
meyer@law.duke.edu
(510) 928-1439