Case No. 22-13546

In the United States Court of Appeals
for the Eleventh Circuit

---

Nalco Company LLC,
Plaintiff-Appellee

v.

Laurence Bonday,
Defendant-Appellent

---

On appeal from the United States District Court
for the Middle District of Florida

## Appellant's Reply Brief

Timothy L. Meyer
Duke University School of Law
210 Science Drive
Durham, NC 27708
meyer@law.duke.edu
(510) 928-1439

## Certificate of Interested Persons

We file this Certificate of Interested Persons and Corporate Disclosure Statement in accordance with Eleventh Circuit Rule 26.1-1:

1. Badalamenti, Hon. John L., U.S. District Court Judge

2. Bonday, Laurence, Defendant-Appellant

3. Ecolab, Inc. (publicly traded as "ECL"), Parent company of Appellee

4. Hooker, Valerie L., Counsel for Appellee

5. Jackson Lewis P.C., Counsel for Appellee

6. Meyer, Timothy L., Counsel for Appellant

7. Mizell, Hon. Nicholas P., U.S. Magistrate Judge

8. Nalco Company LLC, Appellee

9. Thorne, Rene E., Counsel for Appellee

# Table of Contents

Table of Authorities ................................................................................ii

Summary of the Argument ......................................................................1

Argument ...................................................................................................2

**I.  Mr. Bonday Expressly Argued to the District Court that the Arbitrator has Jurisdiction to Resolve Disputes about Arbitrability under the AAA Rules and that His Claim under Section 510 of ERISA is Arbitrable.** . . . . . . . . . . . . . . . . . . 2

**II.  Nalco Improperly Seeks to Conflate Issues of Enforceability, Revocability, and Validity with All Arbitrability Issues** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**III.  The Parties Agreed to Arbitrate All Federal Statutory Claims "Without Limitation".** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Conclusion ...............................................................................................26

Certificate of Compliance

Certificate of Service

# Table of Authorities

**Cases**

*Attix v. Carrington Mortgage Services, LLC*
　　35 F.4th 1284, 1299 (11th Cir. 2022)......................................................11, 13

*B.L. Harbert, LLC v. Hercules Steel Co.,*
　　441 F.3d 905, 909 (11th Cir. 2006) .............................................................1, 9

*Campbell v. Air Jamac Ltd.*
　　760 F.3d 1165, 1168 (11th Cir. 2014)........................................................6-7

*Davis v. Prudential Sec., Inc.*
　　59 F.3d 1186 (11th Cir. 1995)........................................................................17

*Drayton v. Secretary for Dept. of Corrections*
　　249 Fed.Appx 813 (11th Cir. 2007)..........................................................9, 20

*First Options of Chi., Inc. v. Kaplan*
　　514 U.S. 938 (1995)..........................................................................................9

*Goldberg v. Bear, Stearns & Co., Inc.*
　　912 F.2d 1418 (11th Cir. 1990) ....................................................................25

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*
　　552 U.S. 576 (2008)......................................................................................9, 20

*JPay, Inc. v. Kobel*
　　904 F.3d 923 (11th Cir. 2018) ..........................................5, 10, 12-13, 18, 25

*Johnson v. Directory Assistants Inc.,*
　　797 F.3d 1294 (11th Cir. 2015) ......................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*
　　460 U.S. 1 (1983)..............................................................................................25

*Oxford Health Plans LLC v. Sutter*

569 U.S. 564 (2013)................................................................20

*Singer v. Smith Barney Shearson,*
    926 F.Supp.183, 187 (S.D. Fla. 1996)................................................12

*Tannenbaum v. United States*
    148 F.3d 1262 (11th Cir. 1998)........................................................3

*Terminix Intern. Co. LP v. Palmer Ranch Ltd. Partnership*
    432 F.3d 1327 (11th Cir. 2005)................................5-6, 9-10, 12-14

**Statutes and Rules**

29 U.S.C. § 1140 ................................................................24

American Arbitration Association Employment Arbitration Rules .1, 3-6, 9-10, 12-14

Federal Arbitration Act, 9 U.S.C. § 1 et seq. ................................8, 20

# Summary of the Argument

As this Court has said, "The [Federal Arbitration Act] presumes the confirmation of arbitration awards, and federal courts should defer to an arbitrator's decision whenever possible." *B.L. Harbert, LLC v. Hercules Steel Co.*, 441 F.3d 905, 909 (11th Cir. 2006). Here, it is not only possible to defer to the arbitrator's decision to allow Mr. Bonday to present a claim for violation of Section 510 of ERISA and her conclusion that such a claim is arbitrable; it is required under this Court's prior decisions.

Nalco's primary argument to the contrary is that Mr. Bonday did not present his arguments regarding the arbitrator's authority to decide arbitrability and the arbitrability of his ERISA claim to the district court. This is false. Mr. Bonday explicitly argued that the arbitrator had authority to resolve arbitrability under the AAA Employment Arbitration Rules in three separate filings and defended the arbitrator's resolution of the arbitrability issue.

Nalco's secondary argument seek to distinguish this Court's controlling precedent finding that incorporation of the AAA arbitration rules clearly and unmistakably delegates authority to decide the scope of arbitrable claims to the arbitrator. This Court has already rejected Nalco's arguments in a series of cases reaffirming that incorporation of the AAA rules constitutes clear and unmistakable evidence that the

arbitrator may decide arbitrability. Finally, Nalco argues that Mr. Bonday's claim for discrimination under ERISA is not arbitrable under the Agreement. However, Nalco conceded before the district court that such a claim would be arbitrable, and the arbitrator did not exceed her powers in allowing Mr. Bonday to present evidence of such a claim.

Thus, the Court should reverse the district court's decision in its entirety because the district court should have deferred to the arbitrator's decision on arbitrability or, in the alternative, because Mr. Bonday's ERISA claim is arbitrable.

## Argument

### I. Mr. Bonday Expressly Argued to the District Court that the Arbitrator has Jurisdiction to Resolve Disputes about Arbitrability under the AAA Rules and that His Claim under Section 510 of ERISA is Arbitrable.

Nalco's primary argument on appeal is that Mr. Bonday did not present the district court with his argument that the arbitrator had jurisdiction to resolve the parties' dispute regarding the arbitrability of Mr. Bonday's ERISA claim and that the claim is in fact arbitrable. This argument is false and is contradicted by Nalco's own brief, which spends almost two pages listing the times and ways in which Mr. Bonday made this argument. Appellee's Br. at 16-17. Although Mr. Bonday appeared *pro se* before both the arbitrator and the district court, and thus his filings "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be

liberally construed," *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), Mr. Bonday need not rely on liberal construction with respect to his claims about who should decide arbitrability. Mr. Bonday expressly argued in three separate filings that AAA Rules gave the arbitrator jurisdiction to resolve arbitrability, and the district court acknowledged this argument in its opinion below.

Mr. Bonday's Opposition to Plaintiff's Motion to Vacate squarely argues that the arbitrator had jurisdiction to decide the dispute regarding arbitrability, that the district court should therefore defer to the arbitrator's resolution of those issues, and that Mr. Bonday's ERISA claim is arbitrable under the Arbitration Agreement. DE 26. Mr. Bonday argued that the arbitrator "determined that Defendants [sic] demands <u>are arbitrable</u> and informed the Plaintiff as such and gave ample time and notice for Plaintiff to prepare for the arbitration hearing. Accordingly, Plaintiff's motion to vacate arbitration award [sic] should be denied." DE 26 at 2 (emphasis in original). The Opposition also argued that Nalco was bound by the AAA Employment Arbitration Rules, which include the provision granting the arbitrator jurisdiction to decide the scope of arbitrable claims, and that Nalco was bound to respect the arbitrator's determination of the disputed issues. Doc. 26 at 1 ("Plaintiff wrote and forced American Arbitration Association (AAA) arbitration agreement (ECF 1-2) on Defendant and all eligible employees of the company. Doing so should bind

Plaintiff to the AAA Employment rules (ECF 13-3), processes and rulings"). The Opposition goes on to quote the arbitrator's Preliminary Order construing Mr. Bonday to raise age and employment discrimination claims and concluding that "even assuming, arguendo, Respondent (Nalco) is correct as to a breach of contract claim, it does not foreclose the arbitration of other claims raised by Claimant (Bonday), *which are covered by the parties' arbitration agreement.*" DE 26 at 3-4 (emphasis added). Mr. Bonday thus presented the district court both with the argument that the arbitrability of his claims should be decided by the arbitrator and that the ERISA claim on which the arbitrator granted Mr. Bonday relief is arbitrable under the Arbitration Agreement.

Mr. Bonday also filed two motions to dismiss with the district court in response to Nalco's First Amended Complaint and its Second Amended Complaint. DE 15; DE 37. **These motions state that: "*Per AAA Employment Arbitration Rules and Mediation Procedures ("Rules") the Arbitrator has sole authority to determine Jurisdiction; See Ex. C, Rules Section 6 page 12.*"** DE 15 at 1 (emphasis added); *see also* DE 37-1 ("Per the American Arbitration Association (AAA) Employment Arbitration Rules and Mediation Procedures ("Rules") attached as Exhibit B, the Arbitrator has authority to determine Jurisdiction; (*See* Ex. B, Rules – Section 6, page 12-13)"). Section 6 of the AAA rules, to which Mr. Bonday called the district

court's attention on three separate occasions, DE 15 at 1; DE 26 at 1; DE 37 at 1,

provides that: "The arbitrator shall have the power to rule on his or her own jurisdic-

tion, including any objections with respect to the existence, scope or validity of the

arbitration agreement." AAA Employment Arbitration Rules at ¶ 6, DE 18-1 at 125.

This is the exact provision that this Court held in *Terminix Intern. Co. LP v. Palmer*

*Ranch Ltd. Partnership*, 432 F.3d 1327, 1331-32 (11th Cir. 2005) constitutes clear and

unmistakable evidence that the parties agreed that the arbitrator should decide arbi-

trability. *See also JPay, Inc. v. Kobel*, 904 F.3d 923, 937-39 (11th Cir. 2018) (same).

Likewise, Mr. Bonday's Motion to Dismiss the Second Amended Complaint, filed

after the Award, quotes the arbitrator's resolution of the arbitrability issue—conclud-

ing that Mr. Bonday's claim for breach of the Severance Plan is not arbitrable but his

ERISA claim is—thus again putting before the district court the argument that

ERISA claims are arbitrable under the Arbitration Agreement. DE 37 at 2-3.

Finally, the district court acknowledged Mr. Bonday's argument. The district

court construed Mr. Bonday "to argue that the AAA's Employment Arbitration

Rules and Mediation Procedures preclude Nalco from seeking relief in this Court."

DE 39 at 11. The district court itself thus acknowledged that Mr. Bonday was argu-

ing that the AAA rules granted the arbitrator jurisdiction to resolve the dispute

about arbitrability and that the district court could not independently review the arbitrator's decision.

Nalco's theory seems to be that Mr. Bonday's arguments on appeal are new because now, with the benefit of counsel, Mr. Bonday cites applicable caselaw and discusses in depth the language of the Arbitration Agreement. For instance, Nalco argues that "Bonday did not raise the *Terminix* argument in the District Court." Appellee's Br. at 26 n. 11. It is true that Mr. Bonday did not cite *Terminix*, but as noted above, he clearly argued the proposition for which *Terminix* stands—namely, that Section 6 of the AAA rules commits the resolution of arbitrability issues to the arbitrator. DE 15 at 1; DE 26 at 1; DE 37 at 1. By quoting the arbitrator's resolution of the arbitrability issue, Mr. Bonday also presented the district court with the argument that his ERISA claim is arbitrable under the Arbitration Agreement. In light of Mr. Bonday's *pro se* status before the district court, these actions are more than enough to preserve the arguments made on appeal that 1) the parties clearly and unmistakably agreed that the arbitrator should decide the scope of arbitrable disputes, or, in the alternative, 2) that the ERISA claim on which the arbitrator granted Mr. Bonday relief is arbitrable. *See Drayton v. Secretary for Dept. of Corrections*, 249 Fed.Appx. 813, 815) (11th Cir. 2007) (holding that a *pro se* litigant's "reference—albeit scant—to the [issue]" is sufficient to preserve it on appeal); *Campbell v. Air Jamaic Ltd.*, 760 F.3d

1165, 1168 (11th Cir. 2014) ("We hold the allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers.").

Elsewhere, Nalco says that "For the first time on appeal, however, Bonday appears to argue that he has an additional ERISA claim separate from his claim for severance under the Plan." Appellee Br. at 29. Assuming this refers to Mr. Bonday's claim for violation of Section 510 of ERISA, Nalco's argument is false and simply bizarre. The central issue in this case is the arbitrability of Mr. Bonday's Section 510 claim, on which the arbitrator ruled in his favor. In her Preliminary Order, the arbitrator construed Mr. Bonday as stating facts sufficient to raise a discrimination claim under ERISA. DE 18-1 at 152-53. Mr. Bonday then presented this claim to the arbitrator at a merits hearing held on December 7, 2021, which Nalco voluntarily chose not to participate in. *Id.* at 155-56 (notifying the AAA, after receiving the arbitrator's preliminary order denying a stay of arbitration, that Nalco would not participate in any further arbitration proceedings). The arbitrator then ruled in Mr. Bonday's favor on the arbitration claim on December 31, 2021. DE 25-1. Nalco's own Motion to Vacate discusses the evidence that Mr. Bonday put forward in support of his Section 510 claim during the merits hearing. DE 25 at 9. Mr. Bonday opposed the Motion to Vacate, citing the arbitrator's decision that his Section 510 claim is arbitrable. DE 26 at 3. And the district court's opinion below discusses this history and repeatedly

refs specifically to the Section 510 discrimination claim, the arbitrability of which was the issue before it. DE 39 at 2, 9-11, 18, 20 (referring multiple times to Mr. Bonday's claim for discrimination under Section 510 of ERISA).[1]

Nalco's argument is especially brazen given that Nalco, who was represented by counsel, did not argue in its Motion to Vacate either that Mr. Bonday's ERISA claim was nonarbitrable under the terms of the Agreement,[2] nor that the arbitrator had exceeded her powers under Section 10 of the Federal Arbitration Act (FAA) by allowing him to present it.  Instead, Nalco's motion to vacate argued only that 1) that "the arbitrator acted arbitrarily, capriciously, and in manifest disregard of the law" in ruling on arbitrability at all, DE 25 at 11, and that 2) the arbitrator's "underlying finding on the merits of such a claim constitute manifest disregard of the law." DE 25 at 14-15 & n.8. As the district court correctly noted, the Supreme Court

---

[1] To be sure, the district court held "that Mr. Bonday did not submit a Demand for the arbitration of any ERISA discrimination claim" and thus the arbitrator should not have allowed Mr. Bonday to present evidence on the claim or awarded Mr. Bonday damages for the violation of Section 510. DE 39 at 18. As argued in Mr. Bonday's Opening Brief, that was error both because the Section 510 claim is arbitrable under the terms of the Agreement and because the arbitrator was within her power to allow Mr. Bonday to present a Section 510 claim that was, construing the Demand liberally in light of Mr. Bonday's *pro se* status, adequately alleged therein. Appellant's Op. Br. at 38-39.

[2] As explained in Part III.A below, Nalco did not argue that Mr. Bonday's ERISA discrimination claim was nonarbitrable in its motion to vacate because its earlier, pre-award summary judgment motion had already conceded that such a claim would be arbitrable. DE 18 at 10.

announced fifteen years ago that these standards no longer apply and that the exclusive grounds for vacatur are those listed in Section 10. DE 39 at 12 & n.2 (citing *Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1299 (11th Cir. 2015) & *Hall St. Assoc., L.L.C. v. Mattel, Inc.* 552 U.S. 576, 586 (2008)). Moreover, Nalco's motion sought to relitigate the merits of Mr. Bonday's claim, including a request that the district court order a new arbitration if it found for Mr. Bonday. DE 25 at 14. This Court has long held that courts should discourage such efforts: "If we permit parties who lose in arbitration to freely relitigate their cases in court, arbitration will do nothing to reduce congestion in the judicial system; dispute resolution will be slower instead of faster; and reaching a final decision will cost more instead of less." *B.L. Harbert, LLC* 441 F.3d at 907.

## II. Nalco Improperly Seeks to Conflate Issues of Enforceability, Revocability, and Validity with All Arbitrability Issues.

In *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), the Supreme Court held "that a court must defer to an arbitrator's arbitrability decision" when "there is clear and unmistakable evidence that" the parties agreed to let the arbitrator decide whether the merits of a dispute are arbitrable. *Id.* at 943-944 (internal citations and quotations omitted). In *Terminix Intern. Co. LP*, 432 F.3d at 1331-32, this Court held that the incorporation of AAA arbitration rules providing that "[t]he arbitrator

shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" constitutes clear and unmistakeable agreement that the arbitrator should decide arbitrability. *Id.* at 1332; *see also JPay, Inc.*, 904 F.3d at 937-39 (same). The Arbitration Agreement in this case provides that any arbitration "will be conducted in accordance with the AAA Employment Arbitration Rules." DE 36-3, ¶ 10.B. These rules contain a provision identical to the one in *Terminix*. AAA Employment Arbitration Rules, ¶ 6.a, DE 18-1 at 125. Thus, under *Terminix*, the district court should have deferred, and this Court should defer, to the arbitrator's determination regarding the scope of arbitrable claims.

Nalco seeks to evade this Court's controlling decision in *Terminix* by arguing that "a plain reading of the Agreement requires that *all* questions of arbitrability must be decided by a court." Appellee's Br. at 24. In support of this argument, Nalco points to the language contained in the Agreement's definition of a "Dispute" that provides that "[t]his Agreement does not apply to disputes regarding the ***enforceability, revocability or validity*** of the Agreement or any portion of the Agreement. Such disputes can only be resolved by a court of competent jurisdiction." DE 36-3 at ¶ 2.E (emphasis added).

Nalco, however, has never argued that the Arbitration Agreement is unenforceable, has been revoked, or is invalid. Indeed, in its brief it concedes that it is bound by the Arbitration Agreement, Appellee's Br. at 16, and thus that there are no issues of enforceability, revocability, or validity. The provision Nalco points to is thus inapplicable to this dispute about the scope of arbitrable claims.

Nalco's argument improperly seeks to conflate a subset of arbitrability issues—those related to enforceability, revocability, and validity—with all arbitrability issues. But while the Arbitration Agreement withdraws from the arbitrator jurisdiction to resolve disputes about the enforceability, revocability, or validity of the Arbitration Agreement, it says nothing about arbitrability in general. Indeed, the Arbitration Agreement never uses the word "arbitrability." *See* DE 36-3.

Nalco's position is inconsistent with this Court's recognition that there are different kinds of arbitrability issues. For example, this Court has held that issues regarding the scope of arbitrable claims—the issue in this case—is an issue of arbitrability that is distinct from issues of enforceability and validity. *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1298-99 (11th Cir. 2022) ("Some arbitrability questions are about the 'scope' or 'applicability' of the parties' arbitration agreement—i.e., what set of disputes the arbitration agreement covers, and whether it governs the particular dispute at hand. Other arbitrability questions are about the 'validity' or enforceability' of an

arbitration agreement—i.e., whether the parties have entered into a legally operative arbitration agreement that is enforceable under law.") (internal citations omitted). This Court has also held that the question of whether class arbitration is permissible is an issue of arbitrability. *JPay, Inc.*, 904 F.3d at 926-27.

Nalco's argument would mean that arbitrability issues like scope or class arbitration are governed by language about enforceability and validity, even where the issue (here, the scope of arbitrable disputes) is referred to in another provision of the Arbitration Agreement (here, the provision incorporating the AAA rules and their provision granting the arbitrator jurisdiction to decide the scope of arbitrable claims). But arbitration agreements are just contracts to be interpreted in accordance with their terms, *see, e.g., Singer v. Smith Barney Shearson*, 926 F.Supp.183, 187 (S.D. Fla. 1996) ("arbitration agreements are no more than contracts to which the usual rules of contract interpretation apply.") and in light of the presumptions applicable to arbitration agreements, *JPay, Inc*, 904 F. 3d at 929 ("When, despite our best interpretive efforts, a contract is ambiguous or silent on the parties' intent to arbitrate a particular question, we work from a set of default presumptions"). In light of this Court's decision in *Terminix*, the parties clearly and unmistakable agreed that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" AAA

Employment Arbitration Rules at ¶ 6, DE 18-1 at 125. The parties then withdrew issues regarding the "enforceability, revocability and validity" of the Agreement. That left the arbitrator with jurisdiction to decide the dispute in this case regarding the scope of arbitrable claims.

Nalco's makes an additional attempt to distinguish *Terminix* on the basis that, "[u]nlike here, the agreement at issue in *Terminix* did not specifically limit the arbitrator's authority 'to the resolution of Disputes between the Parties,' Doc 36-3 at 5, ¶10(B)(5) [sic] that further specified that 'Disputes' does not include whether a claim is within the scope of the Agreement. Id. at 2, ¶2(E))." Appellee's Br. at 26. This argument fails for three reasons.

First, in reaffirming *Terminix*, this Court has already rejected the argument that the provision incorporating the AAA rules within an arbitration agreement must be located in the same provision granting the arbitrator jurisdiction over substantive claims. In *JPay, Inc.*, this Court held that "either JPay's incorporation of AAA rules or its express delegation clause would have been enough, on its own, to delegate the question [of arbitrability at issue]." 904 F.3d at 941; *see also Attix*, 35 F.4th at 1298 ("we have held that incorporating the AAA's jurisdictional rules into an agreement constitutes clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability even if no other delegation language appears elsewhere in the contract.").

Second, Nalco does not know whether the agreements at issue in *Terminix*, or at least some of them, might have been structured in a similar manner to the Agreement here, with a grant of jurisdiction to the arbitrator to resolve "Disputes" and a definition of what constitutes a dispute. Although Nalco refers to a singular "agreement at issue in *Terminix*," Appellee's Br. at 26, *Terminix* involved multiple arbitration agreements, which all included the provision at issue in this case incorporating the AAA rules but differed in other respects. *Terminix*, 432 F.3d at 1329 n.1 ("[t]he parties signed twenty separate contracts, each of which contained an arbitration clause. The arbitration clauses come in one of three forms."). Nalco provides no citation to the full text of the agreements at issue in *Terminix*, nor does this Court's opinion quote the agreements in full. Thus, it is entirely possible that the arbitration agreements in *Terminix*, or some of them, did contain a similar structure to the Arbitration Agreement here, and the Court simply did not think it changed its analysis.

Third, Nalco's suggests that the definition of "Dispute" in the Arbitration Agreement "specified that 'Disputes' does not include whether a claim is within the scope of the Agreement." Appellee's Br. at 26. This claim is false. The definition of a "Dispute" in ¶2.E of the Agreement does not say anything about disputes over the scope of arbitrable claims, nor does it use the word "scope." Rather, as noted above, the definition of "Dispute" excludes "disputes regarding the enforceability,

revocability or validity of the Agreement or any portion of the Agreement." Doc. 36-3 at ¶ 2.E. Issues of scope are left to the arbitrator by incorporation of the AAA rules.

## III. The Parties Agreed to Arbitrate All Federal Statutory Claims "Without Limitation."

As noted in Mr. Bonday's Opening Brief, even if this Court determines that *de novo* review of the arbitrator's decision regarding the scope of arbitrable claims is appropriate, Mr. Bonday's claim for discrimination under ERISA is arbitrable under the plain text of the Agreement in light of the presumptions courts apply in interpreting the scope of arbitrable claims. Appellant's Op. Br. at 29-37. Indeed, prior to the issuance of the Award, Nalco told the district court that a discrimination claim would be arbitrable. DE 18 at 10. Moreover, the arbitrator did not exceed her authority in allowing Mr. Bonday to present a Section 510 claim. Nalco concedes this latter argument, now saying that it has always understood Mr. Bonday to raise claims for violation of ERISA. Appellee's Br. at 18 n.7; 30.

**A. Nalco Does Not Argue that the Arbitrator's Construction of the Demand is An Issue of Arbitrability and Again Concedes that Mr. Bonday Raised an ERISA Claim. Thus, the Only Arbitrability Question in this Case is Whether Mr. Bonday's Claim for Violation of Section 510 of ERISA is Arbitrable.**

Recall that, having decided that it could review arbitrability *de novo*, the district court made alternative holdings on arbitrability. First, it held that it could review the

arbitrator's construction of Mr. Bonday's Demand *de novo* because it considered review of the Demand an issue of arbitrability and it concluded that the parties had not clearly and unmistakably agreed to let the arbitrator decide such issues. DE 39 at 14-15. It then concluded that Mr. Bonday's Demand did not allege a discrimination claim under ERISA and thus that the arbitrator had exceeded her powers by allowing Mr. Bonday to present evidence for, and then ruling in his favor on, that claim. DE 39 at 17-18. Finally, having concluded that the arbitrator should not have heard the ERISA claim, the district court held that Mr. Bonday's claim for breach of the Severance Plan was not arbitrable. DE 39 at 19. In the alternative, the district court held that Mr. Bonday's claim for discrimination under ERISA is not arbitrable under the Agreement. DE 39 at 20.

With respect to the district court's primary holding, Mr. Bonday argued in his Opening Brief that the arbitrator's construction of a Demand for arbitration via a preliminary order establishing the claims properly before it, prior to briefing and hearings on the merits, is not an issue of arbitrability and thus should be reviewed under the extremely deferential standard applicable to virtually all arbitrator decisions. Appellant's Op. Br. at 20 ("This issue [of construing Mr. Bonday's Demand] is not one of arbitrability.") The primary case on which the district court relied for the proposition that it could review claims submitted to arbitration involved circumstances in

which an award governed an issue not presented to the arbitrator at any point during the proceedings. *Id.* at 41. Indeed, the decision in question allowed that a claim presented at any time during the arbitration could properly be addressed in the award. *See Davis v. Prudential Sec., Inc.*, 59 F3d 1186, 1195 (11th Cir. 1995). Here, by contrast, Nalco voluntarily chose not to participate in the arbitration and then claims surprise that the arbitrator allowed Mr. Bonday to present evidence on a claim that the arbitrator had told Nalco it would allow Mr. Bonday to present. Moreover, Mr. Bonday argued that regardless of the standard of review, Nalco conceded that it understood Mr. Bonday to have alleged an ERISA claim when it invoked ERISA as the basis for the district court's subject matter jurisdiction. In any event, Mr. Bonday argued that Nalco had waived any objection to the arbitrator's construction of the claims raised in Mr. Bonday's Demand by not participating in the arbitration or presenting those arguments to the arbitrator. Appellant's Op. Br. at 38-39.

1. **Nalco Does Not Argue that the Arbitrator's Construction of the Demand is an Issue of Arbitrability.**

In its brief on appeal, Nalco does not argue that the arbitrator's construction of the Demand prior to briefing and hearings is an issue of arbitrability. *See generally* Appellee's Br. at 27-33. It does not address the appropriate standard of review for such a decision in the context of a motion to vacate a final award at all. *Id.* In short, Nalco

does not defend the district court's decision to review the arbitrator's construction of the Demand *de novo* as an issue of arbitrability in any way. It does not because it cannot. The arbitrator's construction of the claims raised by the Demand, in the context of deciding which claims may be heard on the merits, is not "one of a narrow range of potentially dispositive gateway questions, specifically one that contracting parties would likely have expected a court to decide." *JPay, Inc.*, 904 F.3d at 930 (internal quotations, citations, and elipses omitted). Thus, if the Court concludes that it should not defer to the arbitrator's resolution of the scope of arbitrable claims, it still defer to the arbitator's construction of the claims before her, leaving the arbitrability of Mr. Bonday's Section 510 claim the only arbitrability issue before the Court.

## 2. Nalco Concedes that It Understood the Demand to Raise an ERISA Claim.

With respect to the construction of the Demand itself, Nalco now explicitly concedes that it understood Mr. Bonday to allege an ERISA claim. Appellee's Br. at 18 n.7; 30 ("Nalco does not deny that Bonday's claim arises under ERISA because the Plan is an ERISA plan; the claim in the Demand (i.e., that Nalco purportedly failed to pay him severance under the Plan (Doc 36-1)) is an ERISA claim; and that ERISA claim is not arbitrable."). This concession is a confession that the district court erred by interpreting Mr. Bonday's Demand as *not* raising an ERISA claim. After all, neither

the arbitrator nor the district court interpreted Mr. Bonday's claim for breach of the Severance Plan to be a claim that ERISA itself had been violated, Doc. 37-6 at 2-3; DE 39 at 19 (characterizing Mr. Bonday's Demand as raising only a claim that "Nalco did not follow the Severance Plan"). The only claim for violation of ERISA that either the arbitrator or the district court discussed is for discrimination in violation of Section 510. *See* DE 37-6 at 2-3; DE 39 at 19-21 & n. 3 (referring to Mr. Bonday's Section 510 claim as "the ERISA claim"). But if, as Nalco concedes, it has always understood Mr. Bonday's Demand to claim that ERISA itself had been violated, the arbitrator certainly could not exceed her authority—especially in light of Mr. Bonday's *pro se* status—by construing which specific provisions of ERISA those claims arose under. As a result, the only arbitrability issue left in the case is whether Mr. Bonday's claim for violation of Section 510 of ERISA is arbitrable.

**3. Nalco's Summary Judgment Motion Sought Only A Declaration under the Declaratory Judgments Act that Mr. Bonday's Claim for Breach of the Severance Plan was Nonarbitrable and Conceded that an ERISA discrimination Claim Would be Arbitrable.**

Nalco attempts to walk the line between arguing that it understood Mr. Bonday to raise an ERISA claim, but not the particular ERISA claim at issue in this case, by relying on its Motion for Summary Judgment. Appellee's Br. at 27. This motion does

not help Nalco for two reasons. First, that motion was filed on December 17, 2021—while the arbitration was ongoing and two weeks before the arbitrator issued the Award on December 31, 2021. The Motion for Summary Judgment thus sought judicial intervention in an ongoing arbitration under the Declaratory Judgments Act. DE 18 at 1 (seeking summary judgment "on the single Count in the Amended Complaint seeking declaratory judgment regarding the arbitrability of Defendant's claim."). Once the award was issued, however, the Declaratory Judgments Act could not be a source of relief. The Supreme Court has stated clearly that the exclusive basis for relief against a final arbitration award is a motion to vacate under Section 10 of the FAA, *see Hall St. Assoc., L.L.C.*, 552 U.S. at 586, and that the bar to obtaining such relief is extremely high. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568-69 (2013)( A party seeking vacatur under § 10(a)(4) "bears a heavy burden. It is not enough to show that the arbitrator committed an error—or even a serious error."). Thus, as Mr. Bonday argued to the district court, DE 37 at 3, Nalco's motion for summary judgment became moot on December 31 when the arbitrator issued the Award and should have been denied as such. The district court no longer had the power to grant the declaratory relief that Nalco sought in its Motion for Summary Judgment.[3]

---

[3] For the same reason, reversing the district court's decision to vacate the Award in this case would require reversing its grant of summary judgment and declaratory relief in favor of Nalco.

Second, Nalco conceded in its motion for summary judgment that the discrimination claim would be arbitrable but expressly confined its summary judgment motion to Mr. Bonday's claim for breach of the Severance Plan. Nalco wrote that:

> even if Defendant had a disparate treatment claim, whether such a claim is subject to arbitration is separate from the issue in this action, which is limited to whether Defendant's claim in the Demand that Nalco failed to follow the Plan is subject to arbitration – it is not. *In short, **there is simply no basis to inject such an allegation into the Demand to morph Defendant's claim into an arbitrable matter***. DE 18 at 10 (emphasis added).

Thus, Nalco conceded that such an allegation would "morph Defendant's claim into an arbitrable matter." DE 19 at 10. That is exactly what the arbitrator said in her preliminary order. DE 37-5 at 3-4. Nalco also expressly told the district court that it did not need to address the arbitrability of Mr. Bonday's claim for violation of Section 510 of ERISA—which it knew the arbitrator would allow Mr. Bonday to present, DE 18-1 at 152-53—and should confine itself to ruling on the arbitrability of the claim for breach of the Severance Plan. When the arbitrator ruled the claim for breach of the Severance Plan was nonarbitrable, Nalco received all the relief it had sought from the district court.

### 4. Nalco Waived Any Objections to the Construction of the Demand by Not Presenting Those Claims to the Arbitrator.

Finally, Nalco asserts that "Bonday argues in passing that by choosing not to participate in the arbitration, Nalco waived any objection to the Arbitrator's finding that she had jurisdiction." Appellee's Br. at 32. Nalco goes on to argue that it did not waive its jurisdictional arguments because it objected to the arbitrator deciding arbitrability and that "the Arbitrator's actions were a legal nullity from the beginning because she lacked the authority to decide arbitrability." *Id.* This argument is both substantively mistaken and misconstrues Mr. Bonday's waiver argument. It is mistaken with respect to jurisdiction because, as argued above and in Mr. Bonday's Opening Brief, the parties agreed clearly and unmistakably to allow the arbitrator to decide the scope of arbitrable claims. Thus, failing to present any arguments to the arbitrator about the scope of arbitrable claims would waive any such arguments, given that the district court was bound to defer to the arbitrator's resolution of the issue.

It misconstrues Mr. Bonday's argument because he argued 1) that the arbitrator's construction of the claims raised by Mr. Bonday's Demand for arbitration in the arbitrator's Preliminary Order is not a question of arbitrability and thus is entitled to the deference that courts show the arbitrator's findings on any issue other than arbitrability, and 2) Nalco waived its objection to the arbitrator's construction of Mr. Bonday's claims by not participating in the arbitration. Appellant's Op. Br. at 20. Put differently, if this Court concludes that the parties did not clearly and unmistakably

agreed to let the arbitrator decide the scope of arbitrable claims, Nalco remains free to argue that Mr. Bonday's Section 510 claim is not arbitrable under the terms of the Agreement. But it cannot argue that the arbitrator exceeded her powers by allowing Mr. Bonday to present such a claim.

**B. Mr. Bonday's Claim under Section 510 of ERISA is Arbitrable in light of the Plain Language of the Arbitration Agreement and this Court's Precedents regarding the Construction of the Scope of Arbitration Agreements.**

The parties' agreement to arbitrate "without limitation, claims . . . [under] any federal . . . statute . . . regarding employment, employment discrimination," etc., plainly includes an agreement to arbitrate a discrimination claim under Section 510 of ERISA, a federal statute.

Nalco argues that the limitation on the arbitrability of "claims related to . . . controversies over awards of benefits or incentives under . . . employee benefits plans or welfare plans that contain an appeal procedure" prevails over the provision making federal statutory claims related to employment and employment discrimination arbitrable "without limitation." DE 36-3 at ¶ 2.E; Appellee's Br. At 29.

As further explained in Mr. Bonday's Opening Brief, this argument fails for two reasons. First, Mr. Bonday's claim for discrimination in violation of Section 510 of ERISA is not "related to" the Severance Plan within the meaning of the definition

of "Dispute." Appellant's Op. Br. at 32-34. To prevail on a Section 510 claim, a claimant need not show actual entitlement to benefits under a plan, nor anything at all about the plan itself. *See* 29 U.S.C. § 1140 (prohibiting discrimination "for the purpose of interfering with the attainment of any right to which such participant may become entitled"). The focus is on whether the claimant was discriminated against. Moreover, the exclusion for matters "related to" benefits plans is part of a larger set of exclusions that exclude certain kinds of statutory claims. Since the definition of Dispute contains an extremely broad grant of authority to resolve federal claims and then explicitly excludes some federal statutory claims—but not ERISA discrimination claims—it stands to reason that ERISA claims are not within the exclusion. *See* DE 36-3 at ¶ 2.E (excluding claims "related to" violations of the National Labor Relations Act and the Dodd-Frank Act but not ERISA).

Second, the plain language of the definition of Dispute stipulates that federal claims are arbitrable "without limitation," meaning that the arbitrability of federal claims prevails in the event that a claim is both arbitrable under the first two sentence of ¶ 2.E and only arguably excluded under a subsequent limitation on the definition of an arbitrable dispute. This reading of the extremely broad language in the first two sentences of ¶ 2.E and the narrow exclusion in the third sentence also comports with courts normal rule that "[a]ny doubts concerning the scope of arbitrable issues – that

is, doubts over whether an issue falls within the ambit of what the parties agreed to arbitrate – should be resolved in favor of arbitration." *JPay, Inc.* 904 F.3d at 929 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.* 460 U.S. 1, 24-25 (1983). Since, at best, it is ambiguous whether a claim that is arbitrable "without limitation" under the first two sentences of ¶ 2.E but might arguably be "related to" a limitation on arbitrable claims in the next sentence, caselaw requires interpreting the Agreement in favor of arbitrability. *Id.*

Nalco does not offer any alternative reading that seeks to harmonize the broad language in the first two sentences of ¶ 2.E with the narrow exclusion in the third sentence. Instead, Nalco cites several cases in which a specific contractual term is found to limit a general term in the event of a conflict. Appellee's Br. at 29-30. Most of these cases do not involve the interpretation of arbitration clauses and are thus not subject to the rule—applicable to this case—that "[a]ny doubts concerning the scope of arbitrable issues . . . should be resolved in favor of arbitration. *JPay, Inc.* 904 F.3d at 929. In the one case that does involve an arbitration clause—*Goldberg v. Bear, Stearns & Co., Inc.*, 912 F.2d 1418 (11th Cir. 1990)— this Court recognized that a majority of district courts to interpret the clause found that the general clause in favor of arbitration prevailed over the specific limitation in the event of conflict. *Goldberg*, 912 F.2d at 1421. More importantly, none of the cases Nalco cites interpret language like the

language in this Agreement that explicitly provides that the general statement applies "without limitation" and that expressly excludes some federal claims but not the federal claims at issue in this case.

## Conclusion

Nalco decided early on that because it did not believe the dispute to be arbitrable, it should not have to participate in the arbitration. Nalco decided not to participate in the arbitration with full notice that the arbitrator would let Mr. Bonday present evidence in support of a claim for discrimination under ERISA. The fact that it regretted that decision after the arbitrator issued the Award is not a basis for vacating the Award. Having decided not to participate in the arbitration, Nalco cannot now contest the ordinary decisions made by the arbitrator in the course of the proceedings.

The only remaining issues in this case are whether the parties clearly and unmistakably agreed that the arbitrator had jurisdiction to decide the scope of claims arbitrable under the Agreement, and, if not, whether Mr. Bonday's ERISA claim is arbitrable. This Court need only find for Mr. Bonday on one of these issues in order to reverse. Because the parties did clearly and unmistakably agree that the arbitrator had jurisdiction to decide the scope of claims subject to arbitration, and because ERISA claims fall within that scope, this Court should reverse the district court's

judgment in its entirety and remand with instructions to confirm the Award in Mr.

Bonday's favor.

Date: March 3, 2023                Respectfully submitted,

                          /s/ Timothy Meyer
                          Timothy Meyer
                          Duke University School of Law
                          210 Science Drive
                          Durham, NC 27708
                          meyer@law.duke.edu
                          (510) 928-1439

## Certificate of Compliance

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,446 words, excluding the parts of the brief carved out by Fed. R. App. P. 32(a)(7)(B)(iii) and 11th Cir. R. 32-4.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Goudy Old Style font.

/s/ Timothy Meyer
Timothy Meyer
Duke University School of Law
210 Science Drive
Durham, NC 27708
meyer@law.duke.edu
(510) 928-1439

## Certificate of Service

I, Timothy Meyer, certify that I served this Appellant's Reply Brief via the Court's ECF system on March 3, 2023, and that I mailed 4 copies to the Clerk of the Court on the same date.

/s/ Timothy Meyer
Timothy Meyer
Duke University School of Law
210 Science Drive
Durham, NC 27708
meyer@law.duke.edu
(510) 928-1439

## SERVICE LIST

| | |
|---|---|
| René E. Thorne, Esq. | Timothy Meyer |
| ThorneR@jacksonlewis.com | Duke University School of Law |
| JACKSON LEWIS P.C. | 210 Science Drive |
| 650 Poydras Street, Suite 1900 | Durham, NC 27708 |
| New Orleans, Louisiana 70130 | meyer@law.duke.edu |
| Telephone: (504) 208-1755 | (510) 928-1439 |
| Facsimile: (504) 208-1759 | *Attorney for Appellant* |
| *Attorney for Appellee* | |

Valerie L. Hooker, Esq.
Valerie.Hooker@jacksonlewis.com
JACKSON LEWIS P.C.
2 South Biscayne Boulevard, Suite 3500 Miami, FL 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
*Attorney for Appellee*